## JORDAN v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit.
November 28, 1927.

No. 5154.

Criminal law ⚓864, 1174(5)—Court's asking jury whether it was about evenly divided held error, requiring reversal.

Action of trial court in recalling jury after 24 hours' deliberation, and asking foreman whether jury was about evenly divided, *held* reversible error.

Gilbert, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Paul J. McCormick, Judge.

Irvin Jordan was convicted of an offense, and he brings error. Reversed and remanded.

John A. Deweese, Thomas J. Martin, and Josiah Coombs, all of Los Angeles, Cal., for plaintiff in error.

Samuel W. McNabb, U. S. Atty., and John R. Layng, Asst. U. S. Atty., both of Los Angeles, Cal., for the United States.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

RUDKIN, Circuit Judge. About 24 hours after the jury retired to consider of their verdict in this case, the court recalled them of its own motion and propounded the following question, among others:

"The Court: I am not asking you for a division, Mr. Foreman; but I will ask you: Is the jury about evenly divided? You can answer that yes or no.

"The Foreman: Yes, sir."

In Burton v. United States, 196 U. S. 283–305, 25 S. Ct. 243, 49 L. Ed. 482, the presiding judge asked the foreman how the jury was divided, stating that he did not desire to know how many stood for conviction, or how many stood for acquittal, but only how many stood one way, and how many stood the other way, and the foreman replied: "Eleven to one." In condemning the practice, the Supreme Court said:

"We must say, in addition, that a practice ought not to grow up of inquiring of a jury, when brought into court because unable to agree, how the jury is divided; not meaning by such question, how many stand for conviction or how many stand for acquittal, but meaning the proportion of the division, not which way the division may be. Such a practice is not to be commended, because we cannot see how it may be material for the court to understand the proportion of division of opinion among the jury. All that the judge said in regard to the propriety and duty of the jury to fairly and honestly endeavor to agree could have been said, without asking for the fact as to the proportion of their division; and we do not think that the proper administration of the law requires such knowledge or permits such a question on the part of the presiding judge. Cases may easily be imagined where a practice of this kind might lead to improper influences, and for this reason it ought not to obtain."

This language is perfectly plain, but trial judges continued to make the inquiry, and, in view of the fact that the judgment in the Burton Case was reversed on other grounds, there was a diversity of opinion in the different circuits as to the effect of the ruling. Some courts held that the inquiry itself was ground for reversal, while others condemned the practice, but held that the error was not prejudicial in the particular cases under review. The latter view was taken by this court.

The question again came before the Supreme Court in Brasfield v. United States, 272 U. S. 448, 47 S. Ct. 135, 71 L. Ed. 345, and it is apparent from the opinion, that the court was determined to settle the question definitely and finally. After referring to the Burton Case, and to the diversity of opinion in the lower courts as to whether noncompliance with the rule as there announced was reversible error, or whether the expression of the court was hortatory only, the court said:

"We deem it essential to the fair and impartial conduct of the trial that the inquiry itself should be regarded as ground for reversal. Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious, although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful, and is generally harmful, is not to be sanctioned."

This language is too plain to admit of further controversy. The court condemned both the form of the inquiry and the inquiry itself, and declared that in all future cases any such inquiry should be regarded as ground for reversal. It is idle to say that to ask a jury "If it is about evenly divided" does not require it to disclose "the proportion of division of opinion among the jury," or "to reveal the nature or extent of its division."

For this error, the judgment is reversed, and the cause is remanded for a new trial.

GILBERT, Circuit Judge (dissenting). I cannot believe that, by the decision in the Brasfield Case, the Supreme Court intended to declare the hard and fast rule that in a criminal case a trial judge, by merely propounding to a jury unable to agree, a question concerning its division, no matter what the answer may be, or whether answered or not, commits error which affects the substantial rights of the defendant and requires reversal of the judgment. In that case, in reply to the inquiry, the jury had answered that they stood 9 to 3, without indicating which number favored a conviction. The present case differs from that, in that the trial court said to the jury: "I am not asking you for a division, Mr. Foreman, but will ask you if the jury is about evenly divided. You can answer that yes or no." To which the foreman answered, "Yes."

In the opinion in the Brasfield Case, the court reviewed certain decisions to which we may advert as indicating the principles on which its conclusion was reached and the purport of the decision which was made. In the first, the Burton Case, 196 U. S. 283, 25 S. Ct. 243, 49 L. Ed. 482, the Supreme Court, while declining to hold it ground for reversal, disapproved the practice of inquiring the extent of the numerical division in a jury unable to agree. There the answer of the jury had been that they stood 11 to 1. The next reference is to St. Louis & S. F. R. Co. v. Bishard (C. C. A.) 147 F. 496. In that case the judgment was reversed, not on the ground that the court upon inquiry found that the jury, consisting of 11 members, stood 10 to 1, but on that and the further ground that the juror who was standing out against the oth-

ers was admonished that he should listen to their argument, and should try to look at the case from their viewpoint.

The next is Stewart v. United States (C. C. A.) 300 F. 769. There the trial court had asked the jurors whether they were evenly divided, or whether there was a large preponderance one way or the other, and the foreman answered that there seemed to be a large preponderance one way. The judgment was reversed, not on account of that inquiry alone, but on account of the further fact that the court read to the jury extracts from the opinion in Allen v. United States, 164 U. S. 501, 17 S. Ct. 157, 41 L. Ed. 528, one of which was the following: "It certainly cannot be the law that each juror should not listen with deference to the arguments and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself." The last reference is to Nigro v. United States (C. C. A.) 4 F.(2d) 781, where the jury had been asked whether there was a preponderance of the individual jurors in favor of a verdict one way or the other, and the foreman had replied that there was, and the court then read to the jury paragraphs from the opinion in the Allen Case. It was held that the inquiry made to the jury, together with the reading of the abstract statement from the Allen Case, constituted reversible error.

The decision in the Brasfield Case must be read in the light of the principles declared in Cohens v. Virginia, 6 Wheat. 264, 399, 5 L. Ed. 257, and when so read its sum and substance is that to ascertain by inquiry from a jury unable to agree that they stand 9 to 3 is error prejudicial to the substantial rights of the defendant in a criminal case, and ground for reversal of a judgment against him. It must be assumed that the Supreme Court found in the fact that such a division of the jury had been brought to light in open court a psychological influence was exerted upon the minority jurors, which thereafter might tend to induce them to surrender their own convictions. I submit that no mind is sufficiently astute and no imagination is sufficiently fertile to discover prejudice to a defendant in the mere ascertainment by inquiry that the members of the jury, while unable to agree, are about evenly divided upon the issue submitted to them for decision.

It is the duty of a trial judge to discharge a jury as soon as he ascertains that it is unable to agree. It is familiar practice to call the jury in to inquire of them whether agreement is hopeless. It is a practice which has been followed by many of the ablest and fairest judges. When the foreman answers that they are unable to agree, the judge, from his experience, knows that such an answer is often based upon the unyielding attitude of a single juror. The judge ought to be allowed, without prejudice to either party, to go farther and ascertain whether the foreman's report is based upon an even or substantially even division of the jury, and to propound a question calculated to elicit that information. How can it be said that there is anything in such a question, or the answer to it, or in both, that will tend, even in the remotest degree, to induce one juror to surrender his individual conviction of the truth and accept the opinion of others? It is still the law that error in a trial court, in order to be ground for reversal, must be error that affects substantial rights.