KAMANOSUKE YUGE et al. v. UNITED STATES.

No. 9600.

Circuit Court of Appeals, Ninth Circuit.

March 19, 1942.

Rehearing Denied June 2, 1942.

684

Lorrin Andrews, of Los Angeles, Cal., and Robert P. Dockeray, of Burbank, Cal., for appellants.

William Fleet Palmer, U. S. Atty., and A. Andrew Hauk, Asst. U. S. Atty., both of Los Angeles, Cal., for appellee.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

Eleven persons were indicted in one instrument containing two counts. Count I charged all eleven with having kidnapped Hideichi Yamatoda on or about the 23d day of December, 1938, in California, and having transported him into the Republic of Mexico. Count II charged all eleven with having conspired to kidnap the said Yamatoda in California and to transport him into the Republic of Mexico, 18 U.S.C.A. §§ 408a–408c.

All eleven indicted persons were arrested and upon arraignment all pleaded not guilty to both counts of the indictment. All, excepting one, were present and ready for trial by judge and jury when the trial commenced.

The names of those indicted, together with the disposition of the case as to each in the District Court, are as follows: We have italicized the parties appellant.

*Kamanosuke Yuge*— guilty on Count II
disagreement on Count I
sentenced

*Setsuzo Ota*— guilty on both Counts
sentenced

*Kazuji Sonoda*— guilty on both Counts
sentenced

*Richard Iwao Yoshida*— guilty on Count II
disagreement on Count I
sentenced

Tokogiro Nakashima— acquitted on both counts

Frank Ugawa— acquitted on both counts
court's direction

Frank Asanuma— acquitted on both Counts
court's direction

Mitsui Tagawa— not tried
A witness in the case, Tokio Tagawa is a brother of this defendant. In the opinion where this witness is referred to we shall use his whole name.

*Roul Mateus*— guilty on Count I
disagreement on Count II

Louis W. Henry— dismissal as to both Counts

J. Sterling Oswalt— disagreement as to both Counts

There is wide divergence in the testimony and yet there is a main thread of admitted fact running throughout the re-recitals of the several witnesses. In one way or another, innocently or blamefully, each defendant is a character in the factual story.

Yamatoda, it appears, was the "Boss" of a Japanese social or gambling club in "Little Tokio", Los Angeles, and he owned a film exchange business sometimes called the Japanese Film Exchange. He appears to have been conveyed by automobile from Los Angeles to Indio, California, thence to El Centro, California, where he was imprisoned in the county jail and later in the city jail of that city for some hours. Thereafter he was conveyed by automobile across the Mexican Border to a point near Mexicali, Mexico. There is an abundance of evidence upon which the jury could have found as it did do and we herein recite it in brief. The whole affair is lurid and melodramatic, but we cannot say that any of it is so improbable as to be beyond credence, for the reason that the admitted and undisputed facts sustain intact the main thread of the unusual happenings.

The story begins with the testimony of Federal Narcotic Agent John J. Orth as to a conversation in New York City in the summer of 1937, Yuge, Ugawa and Tagawa being present. The testimony as to this conversation and the assignment of error in relation to its admission in evidence will not be considered for the reason that it was stricken from the record and the jury was properly instructed to disregard it.

The first evidentiary event appears to be a meeting in September of 1938 in the Los Angeles Biltmore Hotel, with Orth, Major Manning and Inspector Gillenhammer of the Federal Narcotic Bureau, Yuge, Ota, Sonoda, Ugawa, defendant Tagawa and his brother Tokio all being present. There is testimony that at this meeting Tagawa said he had obtained Yamatoda's arrest in San Francisco and that he could help the officers in their investigation of Yamatoda for suspected violations of the narcotic law, and that he suggested that he perhaps could take over the Tokio Club in Los Angeles and thereby better assist the officers.

Thereafter Orth kept more or less in touch with Yuge, Ota, Sonoda, Ugawa and Tagawa until October 12, 1938, on which date he went to the apartment house wherein these men lived (excepting Tagawa) and there talked with Yuge, Sonoda and defendant Henry, a Los Angeles police officer.

The testimony then moves us up to the evening of September 25, 1938, and to East First Street [formerly Japanese Town], Los Angeles. It appears that Yamatoda went to the Tokio Club and there told Tagawa that he understood he wished to talk to him. About half an hour later Yamatoda with a friend left the Club to walk to the Film Exchange a block away and suddenly observed Police Officer Henry, gun in hand and with Police Officer Dixon, some white men and Ota, Sonoda and Tagawa, running across the street toward them. The officers handcuffed Yamatoda and some others and took them to the city jail. Thereafter the police with Ota, Sonoda and Tagawa went to the Tokio Club taking Yamatoda and his friends Nomura and Nakada with them, but found the doors locked.

The next day Yuge, Ota, Sonoda and Tokio Tagawa went to the Film Exchange where employees of Yamatoda told them officers were coming and that they had better go. Officers Henry and Dixon entered, talked with the employees and left in Henry's car with Ota, Sonoda and Tokio Tagawa.

Three months elapse and the scene is shifted to El Centro, the county seat of

Imperial County within a few miles from the Mexican border and about 200 miles from Los Angeles. On December 21, 1938, Oswalt, at the time the Chief of Police of El Centro, secured the signature of Yoshida to an affidavit charging Yamatoda with a gambling offense. There is evidence that Yoshida said he wanted to put Yamatoda "behind the bars" because Yamatoda had tried to put him there. Upon the affidavit referred to, a warrant of arrest was issued by a Justice of the Peace. Armed with this warrant, Oswalt, with Deputy Sheriff Crousen, started by automobile from El Centro, picked up two Japanese near El Centro whom Oswalt said would help locate Yamatoda and drove on to Los Angeles.

The next day they met Officers Henry and Dixon at the Los Angeles city jail together with the two Japanese picked up in El Centro. That evening Oswalt told Crousen that Yamatoda had been located and later Oswalt, Dixon and Henry went to Yamatoda's home where the El Centro warrant of arrest was served upon him. Yamatoda and a white prisoner were handcuffed together and put in the back seat of an automobile. Henry was in the driver's seat and Oswalt and Crousen were in the front seat with him as they drove to Pomona, about 30 miles from Los Angeles toward El Centro. At Pomona Henry joined Dixon in another car that had followed from Los Angeles. The Oswalt car then was driven on to Indio, about half way between Los Angeles and El Centro, with its remaining passengers. Before they arrived in Indio Yamatoda says he asked to be let loose but that Oswalt accused Yamatoda of double-crossing him and said "I can put you in jail or I can throw you out in the desert".

At Indio the Oswalt party was met by Yuge, Yoshida with his employee Arriola, and another police officer of El Centro. Oswalt had telephoned Yoshida in El Centro to meet him in Indio. After the meeting, Yuge, Yoshida, Yamatoda and Oswalt started for El Centro in Yoshida's car and the others came on later in Oswalt's car after some repairs had been made to it. Ota and Ugawa were waiting at the El Centro Tokio Club when Oswalt and company arrived early in the morning. There was much conversation there in which Yamatoda says Yuge made the following demand: "You do as we order you and give us all of your right and interest in the Great Fujii Theatre and the Film Ex-change, and the Cogya Gaisha and the Club in Los Angeles and also $20,000.00 in cash". Again threats upon Yamatoda's life were made. There is testimony that Oswalt was asleep most of the time the party was at the Club this morning but later in the morning Oswalt with Yoshida took Yamatoda to the jail in El Centro. Yamatoda stayed in jail until around 4:30 p.m. that day at which time he was released and some five or six Japanese escorted him out of jail. Defendant Asanuma, says Yamatoda, was between the front door and the inside door of the jail when Yamatoda was bailed out, and Asanuma took hold of Yamatoda by the left arm as they went out the front door and pushed him into an automobile occupied by Ota, Sonoda, Yoshida and Ugawa. Again Yamatoda says threats of violence were made against him, Asanuma saying, "If you fight we will kill you. This is the last time you are in the United States".

They drove around El Centro restraining Yamatoda, but when the automobile stopped at a boulevard crossing Yamatoda, forcefully breaking away, jumped from the car, fell, got up and ran into a gas station where he tried to telephone. There was quite a disturbance over this event in which some of the party said Yamatoda was crazy and a policeman, after arresting Yamatoda and Ota, took them to the police station. There a belt containing $2,500 was taken from Yamatoda's person but it appears to have been returned to him intact before his release around 1:30 the next morning. Yamatoda was brought into a large room with others at the time of his release but what occurred there need not be narrated here.

Yamatoda went out of the jail handcuffed. He was taken to the rear of a yellow coupe and Oswalt told him to get in with Mateus and he was pushed in. It should be noticed that this is the first appearance or mention of Mateus in the case. Officer Keating of the El Centro police was at the wheel of the coupe. Yuge, Ota, Sonoda, and Yoshida were present on the sidewalk.

Thus not much later than 1:30 a.m. of the 24th day of December, 1938, according to competent evidence, though there is much conflict as to detail, the coupe driven by Keating with Mateus and Yamatoda in the front seat moved away from the jail house. Yamatoda says he grabbed the wheel attempting to cause a collision with

a passing car but did not succeed and that Mateus pulled him by the neck. They followed another automobile and the two cars presently stopped close together. Yuge, Ota, Sonoda, Yoshida and Oswalt got out of one car. Oswalt again threatened Yamatoda and pulled him out of the car and removed the handcuffs saying, "This is your last chance. Do you want to go to Mexico or die." Yamatoda said, "No, I don't want to go to Mexico". Yamatoda testifies though Mateus denies it [in fact Mateus denies he was in the party at all], that the latter opened the coupe turtleback and Oswalt said "get in". Yamatoda got in and Sonoda at Oswalt's command got in with him. The turtleback cover was then let down and someone in the party commanded silence upon pain of being shot. The coupe was driven again for fifteen or twenty minutes, again was brought to a stop, the turtleback was again opened and Mateus said "Get out. If you holler I will shoot". Then Mateus gave some tape to Sonoda and said "Put this tape on his eyes and mouth". Yamatoda said, "Shoot if you are going to". Sonoda said, "He says shoot, go ahead, shoot". Then Mateus searched Yamatoda and said, "Get in and if you holler I will shoot. I can shoot you from the front seat of the coupe". Yamatoda was put back in the turtleback but not taped. The car went on for five minutes then stopped, there was a conversation in Spanish and the car went on. Yamatoda yelled to Sonoda and Sonoda said, "If you holler you will be shot from above, so shut up". Five minutes later the car again stopped. Mateus, gun in hand opened the turtleback, searched Yamatoda, took his money and Sonoda said, "This is Mexico". Mateus in the presence of Sonoda and Keating ordered Yamatoda to move on or he would shoot him. Yamatoda ran but stopped and asked for a $500 bill. Mateus refused but did give him a bill of smaller value. Yamatoda climbed a fence and around 2 a.m. walked into a garage. Yamatoda says he saw Sonoda in a Mexicali, Mexico, hotel bedroom about 3 a.m. that morning. Yamatoda was with an interpreter and two police officers.

There was introduced into evidence a written statement to a Mexican Immigration Officer in which, over Yamatoda's signature, it was stated in Spanish that he came into Mexico alone and Yamatoda explains this by saying that the interpreter had told him the statement described the kidnapping.

At the conclusion of the Government's case and at the conclusion of the taking of evidence, motions were made in behalf of each defendant remaining in the case requesting the dismissal of all charges in the indictment against each defendant remaining in the case and that the court direct the jury to render a verdict of not guilty as to him on both counts of the indictment. The ground of the motions was that no sufficient evidence had been introduced upon which to base a conviction. These motions were denied. Alleged error in the Court's denying the motions is the basis of appellants' Point I.

### Point I

■ We hold that there is substantial evidence in the case to support the allegations of the indictment that Yamatoda was the intended victim of a kidnapping conspiracy and that he was actually kidnapped and that there was substantial evidence introduced at the trial to support the jury in the verdicts of guilty rendered. By like reasoning the Court was right in denying the motions to dismiss. These conclusions are, of course, arrived at upon the premise that no reversible error occurred in the course of the trial, and, as will later be seen, we find this premise sound.

### Point II

Appellants' second "Point" relates to alleged errors of the trial court in its rulings on questions of law. Forty-two assignments of error have been filed on behalf of appellants Yuge and Ota. Separate assignments of error were filed on behalf of appellants Sonoda, Yoshida and Mateus. It is stated in appellants' brief, "As, however, the assignments of error filed in behalf of the appellants Yuge and Ota cover all of the points made by counsel for the other appellants, the assignments of error filed on behalf of the first named two appellants * * * will be presented on behalf of all the appellants". For convenience we shall treat the assignments of error in the same manner.

■ The court denied motions to strike certain testimony given by John W. Orth and George Gyllenhammer, Federal Narcotic Officers. This is assigned as error. The witnesses testified as to certain conversations when some of the appellants and these officials were present. The first conversation occurred in New York in 1937, and as hereinbefore stated, was stricken by the Court; and the other as has

been related at the Biltmore Hotel in Los Angeles in September of 1938. Appellants Sonoda, Ota and Yuge and other defendants not parties to this appeal were at this later meeting.

It will be recalled from the recital of the Biltmore Hotel conversation that the gist of it was that Tagawa had said he would help catch Yamatoda in narcotic violations and perhaps he [Tagawa] could take over the Tokio Club. It is claimed that the testimony is hearsay, too remote and immaterial.

This conversation indicates the beginning of some activity concerning Yamatoda, and suggests the taking over of the Tokio Club said to be one of the desired fruits of the alleged conspiracy to kidnap Yamatoda. Its materiality as to the speaker is plain and although it occurred more than two months before the happening of any overt acts we think the trial court's determination that it was not too remote to be received into evidence should not be disturbed. Upon the score of hearsay, the trial court limited its application to the defendants present at the conversation. It is urged, however, that it was error for the court to allow the testimony to be considered against any defendant other than the speaker [who, it will be recalled, though this fact is not controlling, was not tried with appellants], since the conversation took place prior to the time the alleged conspiracy was formed.

■ This principle is well stated in Collenger v. United States, 50 F.2d 345, 348, certiorari denied 284 U.S. 654, 52 S.Ct. 33, 76 L.Ed. 554. "It is elementary that a statement of a conspirator, in order to bind the co-conspirator, must be a statement not made in the formation of the conspiracy, but after the conspiracy is formed, and in furtherance of its objects. It is then admissible against all upon the theory that each then speaks and acts for all, if speaking or acting in furtherance of the objects of the conspiracy." See, also, Vendetti v. United States, 27 F.2d 856, 858, certiorari denied 278 U.S. 650, 49 S.Ct. 94, 73 L.Ed 561.

It is urged by the Government, however, that even though the conspiracy was not yet formed, still the statements are chargeable against the defendants present at the time the statements were made. The Government's theory is probably that there was some sort of an admission on the part of these defendants, or perhaps that even

though the words were spoken by just one person, that person was acting as spokesman for all defendants present.

■ From the record furnished us, we are unable to glean facts sufficient to support any theory of constructive responsibility upon the part of defendants present for anything said by another defendant at this meeting. Nevertheless we are of the opinion that any error of the trial court in this respect was without any possible prejudice to the appellants, in view of all the evidence introduced in the case regarding the participation of the various appellants in the kidnap scheme and its execution. See 28 U.S.C.A. § 391; Williams v. United States, 8 Cir., 265 F. 625; Ross v. United States, 9 Cir., 103 F.2d 600, 607.

■ The next error claimed is in the court's ruling refusing to strike the testimony of Justice of the Peace J. E. Simpson and Deputy Sheriff John Crousen.

Justice of the Peace Simpson's entire testimony consisted of an identification of the criminal complaint upon which the warrant for Yamatoda's arrest was issued, and statement to the effect that Oswalt signed and verified it and that Oswalt told the witness that he [Oswalt] would handle the warrant.

The motion to strike the testimony was simply "that it was not connected up by subsequent testimony of the prosecution, immaterial and not tending to prove any of the charges made in * * * the indictment". No supporting argument appears in the brief. The connection of this evidence with the case and its materiality show on its face.

■ Deputy Sheriff Crousen, it will be recalled, traveled to Los Angeles with Oswalt on December 21, 1938 after the issuance of the warrant for Yamatoda's arrest in El Centro. He testified as to conversations and occurrences between himself and Oswalt leading up to the arrest of Yamatoda.

Appellants' points as to this testimony are the same as were made as to Simpson's, and our views as to the latter apply here.

■ It is further urged, however, that this testimony was inadmissible against any defendant other than Oswalt.

We have already held that there was ample evidence that a conspiracy had been formed, and it cannot be questioned that where evidence of the existence of a conspiracy has come into the case, evidence

of acts and declarations of one of the alleged and connected co-conspirators in furtherance of the conspiracy is admissible against all regardless of whether or not they had knowledge of the specific acts and declarations referred to in such evidence. By joining in the scheme the co-conspirators are tainted by it and by the act of joining it they adopt as their own all of the acts and declarations of the other co-conspirators in furtherance of and during the continuance of the conspiracy.

An argument arises, however, from the fact that Oswalt was not convicted of the conspiracy. From this fact the deduction is made that Oswalt was not a co-conspirator and hence his acts and declarations do not fit the rule. But this deduction is not in accord with the authorities. See Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356, 80 A.L.R. 161 and United States v. General Motors Corporation, 7 Cir., 121 F.2d 376, 411.

To hold with appellants upon the point under consideration would make the trial of conspiracy charges practically impossible. It would require a trial judge in each instance to foresee just what decision the jury will reach as to each alleged co-conspirator before he could rule upon the admissibility of evidence of acts and declarations of the co-conspirators. Such a rule applied in a jury case would practically abrogate the rule of responsibility of all members of a conspiracy for acts of the other conspirators.

We hold, therefore, that where there is evidence to connect one defendant with a conspiracy, the fact that the jury fails to convict him of the conspiracy charge does not in and of itself render testimony of that person's acts and declarations inadmissible as against other alleged co-conspirators. The trial judge's discretion in the admission of testimony and instructions relating thereto must be relied upon as a protection against injustice following this rule.

■ The admission of testimony of Arion R. McCartney, Jr., a young man who testified that he saw a yellow automobile at Oswalt's home on December 23, 1938 and that Mateus was at Oswalt's home at that time, is assigned as error, as being irrelevant and if relevant improper against any defendant other than Oswalt, who was not convicted of being a member of the conspiracy. The second portion of this objection is the same as was raised with respect

to the testimony of John Crousen, and our answer to the argument is the same. With respect to the materiality of the evidence, it will be recalled that there is testimony that Yamatoda was taken to Mexicali in a yellow automobile and that Oswalt and Mateus were involved in the taking. There is no merit to the assignment.

■ The Court's refusal to strike testimony of Deputy Sheriff J. D. Campbell is next assigned as error. He testified that he received an order to release Yamatoda from the county jail at El Centro on the afternoon of December 23, 1938 from "a small Japanese"; that there were four or five other Japanese present when he got the order for the release; and that upon Yamatoda's release two or three of the Japanese met him and "escorted him out". The witness could not identify any of these Japanese at the trial. Appellants urge that the testimony was inadmissible because it was not connected up with the conspiracy. They seem to argue that because Officer Campbell could not identify the Japanese any idea that the testimony was connected up with the conspiracy was negatived. But here again appellants' point is without merit. Yamatoda in testifying as to his release from the El Centro jail identified the "small Japanese" as the defendant Asanuma, and he testified that Asanuma was accompanied by another man, whom he believed to be Japanese. When they reached the street they were met by some more Japanese. Officer Campbell's testimony served to corroborate Yamatoda's story of the events and was entirely relevant to the charges of the indictment.

■ The admission of the testimony of Government witness Noboru Tsuda is assigned as error. Tsuda testified concerning conversations with the defendants Ota and Nakashima on February 8 and 10, 1939, at Los Angeles, California, after the asserted kidnapping of Yamatoda. The Court in admitting evidence of these conversations limited it to the defendants present at the time of their utterance and the jury was instructed to disregard the evidence as to all other defendants.

Appellants' point here is substantially the same as raised with respect to the testimony concerning the conversations at the Los Angeles Biltmore Hotel—that acts and declarations of a conspirator, to be admissible against his co-conspirators, must occur during the existence of the conspiracy. The argument is advanced that the

evidence should have been limited to the defendant making the statements, and excluded as to the other defendants present. It is also urged that the evidence was in any event immaterial and that it was hearsay.

There are two conversations complained of. First the witness testified that he was in the Film Exchange formerly if not then owned by Yamatoda and that he heard the defendant Nakashima say, in the presence of the witness, the defendant Ota and others not defendants, "From now on I am going to run this company and I will employ you all"; and that at the same time Nakashima also said to the office girl, "I will count on you". The defendant Ota said nothing at that time. The next day the witness and Ota were alone in the inside office at the Film Exchange, and Ota said to the witness, "Mr. Yamatoda might be dead by this time. Any way, even if he is not, he will not be able to come back to this country because he had a fight with the Immigration Office. So how about cooperating with us in running this company?"

First as to the materiality of the evidence, it was the theory of the prosecution throughout the trial of the case that the motive of the defendants in their plot to kidnap Yamatoda was to obtain control of Yamatoda's interests. It was upon this theory that we held admissible the testimony relating to the conversations in September, 1938. With this in mind it becomes evident that later conversations tending to prove that after the kidnapping the defendants did at least attempt to gain control of the film exchange—one of the fruits of the kidnapping plans—are admissible as further proof of the motive for the crime.

As to the objection that the statement was inadmissible hearsay, there is no merit in appellants' argument. In the first place, the conversations were not introduced into evidence in order to prove the truth thereof, the very first test of what constitutes a hearsay statement. Rather they were intended to prove the fact that the defendants were exercising dominion over and acting as one entitled to possess the film exchange.

However, even though the statements had been introduced as proof of the fact that the defendants had "taken over", they would constitute admissions of the respective speakers and hence fall within the exceptions to the hearsay rule.

Regarding the claim that the evidence should have been limited to the persons actually engaged in the conversations and not to defendants present as the court limited it, we refer to our discussion herein of the September, 1938 conversation, prior to the overt acts. We there held that there was possible error in allowing similar statements to be considered against defendants who were merely present. There being no evidence of circumstances tending to the conclusion that the defendants present in some way adopted the statements as their own or should be bound thereby, we think the same rule applies here. However, when it is considered that Ota, the only person this point would affect, the very next day is found making a statement along the same line and at the same place suggesting that the witness cooperate with "us", evidently meaning with Nakashima and himself, no possible prejudice could have resulted. We find no reversible error.

### Point III

Appellants' third "Point" is stated in their opening brief to be "No judgment of conviction under count two of said indictment, to-wit: a conspiracy to kidnap, can be sustained when there was no verdict of guilty against J. Sterling Oswalt". The claim is that the theory of the prosecution was that Oswalt "was the head and front" of the conspiracy to kidnap Yamatoda; and that since the jury disagreed as to Oswalt it was error for them to convict the others.

In the first place, there is nothing in the prosecution's case to indicate that its theory was as claimed by the appellants. True, it was charged and the prosecution attempted to prove that a conspiracy existed among the appellants and others including Oswalt, but there is nothing at all inconsistent with the verdict against the convicted appellants and the jury's failure to convict Oswalt, with the possible exception of the point made and heretofore treated regarding the reception of evidence of Oswalt's statements. See Donegan v. United States, 2 Cir., 287 F. 641, 648, certiorari denied 260 U.S. 751, 43 S.Ct. 251, 67 L.Ed. 495; United States v. General Motors Corporation, supra; and Dunn v. United States, supra.

Appellants claim error because of the use of aliases in the indictment. This point deserves no consideration.

### Point IV

Appellants' fourth "Point" is very similar to the first portion of their "Point III". It is entitled, "The verdict of the jury against these appellants was inconsistent and should be set aside, in that they acquitted defendants Frank Asanuma, Frank Ugawa and Tokojiro Nakashima and convicted defendants Kamanosuke Yuge, Sutsuzo Ota, Kazaju Sonoda and Richard Iwao Yoshida on the same evidence * * *".

We do not go into a detailed discussion of this assignment of error, for the reason that the law is clear that a verdict is not inconsistent that is consistent with itself. See Sasser v. United States, 5 Cir., 29 F.2d 76, 78, certiorari denied 279 U.S. 836, 49 S.Ct. 250, 73 L.Ed. 983; Rooney v. United States, 9 Cir., 203 F. 928; United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 247, 60 S.Ct. 811, 84 L.Ed. 1129; United States v. Cotter, 2 Cir., 60 F.2d 689, 690, 691, certiorari denied 287 U.S. 666, 53 S.Ct. 291, 77 L.Ed. 575; Bryant v. United States, 5 Cir., 257 F. 378, 385; 18 U.S.C.A. § 566. We find no error here.

The remainder of appellants' brief is devoted to an argument that, as to each of the five appellants herein, the evidence was insufficient to show guilt as to the count upon which each such appellant was convicted, and insufficient to justify or substantiate the verdict. This is a mere repetition of appellants' "Point I" broken down into a discussion of the particular evidence against each appellant. We have already held that there was sufficient and substantial evidence in the record to support the jury's verdict, and this is all inclusive.

Affirmed as to each appellant.