UNITED STATES of America,
Plaintiff-Appellee,

v.

Leon Dudley NOAH, Ronnie Kinsey, and Joseph Corre Lamb, Jr.,
Defendants-Appellants.

Nos. 78–1283 to 78–1285.

United States Court of Appeals,
Ninth Circuit.

April 11, 1979.

---

John S. Obenour, Asst. U. S. Atty. (argued), Seattle, Wash., for the U. S.

David M. Shelton (argued), Irwin Schwartz (argued), Robert L. Butler (argued), Seattle, Wash., for defendants-appellants.

Before ELY and KILKENNY, Circuit Judges, and FERGUSON,\* District Judge.

### PER CURIAM:

The appellants, in a jury trial, were convicted of a number of federal crimes. After the jury had begun its deliberations, it was recalled to the courtroom and the district judge made inquiry of the jury as to its numerical division. This was plain error. *Brasfield v. United States,* 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926). *Accord, Jordan v. United States,* 22 F.2d 966 (9th Cir. 1927).[1] In *Brasfield,* Mr. Justice Stone, for a unanimous Court, wrote, in part:

> We deem it essential to the fair and impartial conduct of the trial, that the inquiry itself should be regarded as ground for reversal. Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned.

272 U.S. at 450, 47 S.Ct. at 135, 136.

In the present case, the inappropriate inquiry was not only made once, but was made twice, once on two separate days. *Cf. United States v. Seawell,* 550 F.2d 1159 (9th Cir. 1977) (giving two so-called *Allen* charges held erroneous). It is highly significant also that when the first inquiry was addressed to the jury, the appellants and their attorneys were not even present, nor had their attendance been invited, although it is not disputed that they were readily available. *See* Rule 43 Fed.R.Crim.P.

We do not reach other significant contentions. Because of the circumstances briefly set forth above, the appellants are entitled to a new trial.

### REVERSED AND REMANDED.[2]

---

\* Honorable Warren J. Ferguson, United States District Judge, Central District of California, sitting by designation.

1. The appellee urges the proposition that our decision in *Marsh v. Cupp,* 536 F.2d 1287 (9th Cir. 1976), would warrant the non-application of the *Brasfield* rule, which, incidentally, is described in Devitt & Blackmar as "cardinal." 1 Devitt & Blackmar, Federal Jury Practice and Instructions § 5.22, pp. 161–62 (3rd ed. 1977). *Marsh* is simply not applicable in the present case. In *Marsh* the appellant agreed, in open court, that the judge might conduct an inquiry as to the numerical division of the jury. In such circumstances, it was, of course, thoroughly and legally appropriate that the *Brasfield* principle not be applied.

2. The majority has, of course, considered the carefully written comments of Judge Kilkenny. While the utmost respect is accorded to those comments, the majority cannot, in the light of *Brasfield,* accept Judge Kilkenny's conclusion. The majority believes that the dissenting opinion's equation of the *Brasfield* rule with the

KILKENNY, Circuit Judge, dissenting:

This eighteen day trial covering an entire month, with a transcript of testimony consisting of nineteen volumes, in addition to a clerk's record of 490 pages, should not be overturned on what I believe to be harmless error, if any.

## I.

It is my considered judgment that the procedural prohibition against a trial judge's asking jurors their numerical standing, as stated in *Brasfield v. United States,* 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926), did not survive the adoption by the Supreme Court of the Federal Rules of Criminal Procedure.

*Brasfield* was decided by the United States Supreme Court on November 22, 1926, long prior to September 1, 1945, the effective date of F.R.Crim.P. These rules were authorized by the Act of Congress of June 29, 1940, 54 Stat. 688, and promulgated by the United States Supreme Court by order dated December 26, 1944. They were promulgated and adopted to govern all criminal proceedings thereafter commenced and insofar as just and practicable all proceedings then pending. Rule 59, F.R. Crim.P.

Rule 52(a), F.R.Crim.P., provided and now provides:

"Rule 52. *Harmless Error and Plain Error.*

(a) *Harmless Error.* Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

(b) *Plain Error.* Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

My belief that *Brasfield* can no longer be considered as authoritative and that the act of a judge asking the jury its numerical standing should, at best, be viewed as harmless, is based principally on the ground: (1) that Rule 52(a), F.R.Crim.P., was not in existence at the time of the decision in *Brasfield,* and (2) that the Ninth Circuit, time after time, has approved the *Allen*[1] instruction which is far more coercive than the simple inquiry involved in *Brasfield.* As recently as June 28, 1978, in *United States v. Seawell,* 583 F.2d 416, 417–418 (CA9 1978), *rehearing and rehearing in banc denied* September 27, 1978, *cert. denied* November 27, 1978, —— U.S. ——, 99 S.Ct. 591, 58 L.Ed.2d 666, we again gave approval to the substance of the *Allen* instruction. Indeed, the *Allen* instruction is cited with approval by the Supreme Court as recently as 1972. *See Johnson v. Louisiana,* 406 U.S. 356, 361–362, 380, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972).

The *Allen* instruction approved in *Seawell* reminded the jury: (1) of the expense in time, effort and money to both the defense and the prosecution in the event a new trial was necessary; (2) that the case, like all cases, had to be disposed of some time and that there was no reason to believe that another trial would not be as costly to both sides as was the present trial; (3) that a future jury must be selected in the same manner as it was and that there was no reason to believe that the case would ever be submitted to twelve men and women more conscientious, more impartial, or more competent to decide the case; (4) that it was their duty to consult with one

so-called *Allen* charge is fallacious. It is true that the *Brasfield* Court, in the language that the majority has quoted, used the word "coercive". Despite this, there is another factor that must be taken into account. This is that the slightest intrusion upon the privacy of a jury's deliberation should not be allowed and the bar to such intrusion should not, in the majority's view, be impaired, even to the slightest degree. It is inconceivable to the majority that some of the nine Justices who issued the *Brasfield* principle did not weigh this consideration.

It warrants reiteration, too, that the present case is unique. The *Brasfield* rule was twice disregarded by the trial judge in the present case, once on each of two separate days, and once in the absence of the accuseds and their attorneys. Even the *Allen* instruction, involving only a possible "coercive" effect and not the jury's right of privacy, cannot appropriately be given twice. *United States v. Seawell, supra.*

1. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

another and deliberate with a view of reaching a verdict if they could do so without doing violence to their individual conscience; (5) that each of the jurors must decide the case for himself, but that he should do so only after consideration of the evidence in the case with his fellow jurors; (6) that he should not hesitate to reexamine his own views or to change his mind if he is convinced it was originally erroneous; (7) that in order to bring twelve minds to an unanimous verdict, each juror should examine the questions submitted with candor and frankness and with a *proper deference to and regard for the opinions of others.* More important, on the issue of numerical divisions, the judge told the jury that "if much the greater number of you are for a conviction, each dissenting juror ought to consider whether a doubt in his or her own mind is a reasonable one, since it makes no effective impression upon the minds of so many equally conscientious fellow jurors who bear the same responsibility under the same oath and have heard the same evidence."

I do not believe the majority would argue that the instruction in *Brasfield* was as coercive as the one given and approved in *Seawell.* The contrary is obvious. The instruction given in *Seawell,* if coercive at all, was far more so than that given in *Brasfield.* One thing is certain, the decision in *Brasfield* is diametrically opposed to the decisions in *Allen, Seawell* and those cited in *Seawell.* Logically, they cannot be reconciled. I would hold that *Allen,* approved by the Supreme Court as recently as *Johnson v. Louisiana, supra* (1972), is the law of the land and that the simple question propounded to the jurors in *Brasfield* and by the court below should no longer be viewed as reversible error. See Rule 52(a), (b).

True enough, our circuit in *Spaugh v. United States,* 77 F.2d 720 (CA9 1935), and *Jordan v. United States,* 22 F.2d 966 (CA9 1927), reversed two criminal convictions in reliance upon *Brasfield.* Nonetheless, each of these cases was decided prior to the adoption of the Federal Rules of Criminal Procedure and prior to our decisions in *Marsh v. Cupp,* 536 F.2d 1287 (CA9 1976),

*cert. denied* 429 U.S. 981, 97 S.Ct. 494, 50 L.Ed.2d 590 (1976), and *United States v. Williams,* 444 F.2d 108 (CA9 1971).

In *Marsh,* the Oregon state trial judge, prior to giving a second *Allen* instruction, inquired as to the numerical split of the jury. *Marsh v. Cupp,* 392 F.Supp. 1060, 1063 (D.C.Or.1975). The judge was informed that the jury was divided nine–three, the same division as is before us. The *Marsh* court concluded that *Brasfield* was not controlling despite the fact that the jury was given the *Allen* charge on two different occasions. *Marsh, supra,* 536 F.2d at 1291. In *Williams,* the court held that the trial court was not precluded from giving the *Allen* instruction by reason of the fact that the jury had made an unsolicited disclosure of its numerical division. In *United States v. Rao,* 394 F.2d 354 (CA2 1968), *cert. denied* 393 U.S. 845, 89 S.Ct. 129, 21 L.Ed.2d 116 (1968), and *Bowen v. United States,* 153 F.2d 747 (CA8 1946), *cert. denied* 328 U.S. 835, 66 S.Ct. 980, 90 L.Ed. 1611 (1946), the numerical split was volunteered by the jury also. The *Williams, Rao* and *Bowen* courts distinguished *Brasfield* on that ground. In *Marsh,* however, the inquiry was made by the court.

Logically, I am unable to find a valid distinction between an inquiry by the court as to the numerical standing of a jury and the volunteering of such information by the foreman of the jury. The assumed coercive effect would be upon the minority jurors and this effect would be felt whether the foreman volunteered it or the court requested it. In each instance, the information is revealed in open court. However, in neither instance does the information reveal the standing of the jury on the issue of guilt or innocence. I completely agree with the *Marsh v. Cupp* district court that the decision in *Brasfield* was based on the court's supervisory powers in the lower courts and not on constitutional interpretations. The *Brasfield* court condemned the inquiry as to numerical division on the ground that it, ". . . affects the proper relations of the court to the jury . ." This is clearly a supervisory ruling on a

*procedural* subject. I repeat that *Brasfield,* as a procedural rule, was modified or overturned by the enactment and adoption of the Federal Rules of Criminal Procedure and that the Harmless Error Rule 52(a), F.R.Crim.P., should be applied to these facts.

Nor was the *Brasfield* court confronted with the plain error provision of Rule 52(b). It is well established in this circuit that this Rule will be invoked only if it is *highly probable* that the error materially affected the jury's verdict, *United States v. Dixon,* 562 F.2d 1138, 1143 (CA9 1977), *cert. denied* 435 U.S. 927, 98 S.Ct. 1494, 55 L.Ed.2d 521; *United States v. Segna,* 555 F.2d 226 (CA9 1977), or if it appears to be necessary in order to prevent the miscarriage of justice or to preserve the integrity and reputation of the judicial process. *United States v. Larson,* 507 F.2d 385, 387 (CA9 1974); *United States v. Trejo,* 501 F.2d 138, 141 (CA9 1974).[2]

Rules 1 and 2, F.R.Crim.P., provide that the *rules will govern the procedure in all criminal proceedings* in the courts of the United States and were designed to simplify existing procedure and to eliminate outmoded technicalities. *United States v. Debrow,* 346 U.S. 374, 376, 74 S.Ct. 113, 98 L.Ed. 92 (1953); *United States v. Bickford,* 168 F.2d 26, 27 (CA9 1948).

Not only did counsel for appellants fail to make an objection,[3] they failed to ask the court to recall the jury and instruct the members to disregard and put out of their minds all questions by the court with reference to the numerical standing of any one of appellants. It would seem that counsel and defendants were as anxious to know the numerical standing of the jury as was the court. In these circumstances, our decisions interpreting the plain error provisions of Rule 52(b), *United States v. Dixon, supra; United States v. Trejo, supra;* and the Fifth Circuit case of *United States v. Jacquillon,* 469 F.2d 380 (CA5 1972), *cert. denied* 410 U.S. 938, 93 S.Ct. 1400, 35 L.Ed.2d 604 (1973), should be followed. It appears from the record that trial counsel for appellants were exceptionally able and resourceful lawyers and they should not be permitted to gamble for a favorable verdict and then resort on appeal to errors that might have easily been corrected by objection at trial. *United States v. Jacquillon, supra,* at 386.

## II.

Appellants' seriously contend that the district judge violated the provisions of Rule 43, F.R.Crim.P., when he assembled the jury in the absence of counsel and defendants and asked the jury foreman to report the jury's numerical division as to each de-

---

**2.** It should be noted that here the jury was not deadlocked, but was making definite progress toward verdicts at the time of the last interrogation:

"THE COURT: Are you of the opinion, Mr. Israel, [foreman] that the jury should continue to deliberate or *should I dismiss the jury?*
JUROR ISRAEL: *I think we should continue.*
THE COURT: Would you prefer to continue tonight or come back tomorrow?
JUROR ISRAEL: Tomorrow, I think.
THE COURT: All right; now, last night at about this time you were in some numerical standing as to each defendant.
Has there been any change in the numerical standing as to the Defendant Wiley?
JUROR ISRAEL: Yes.
THE COURT: Any change in the numerical standing as to the Defendant Collins?
JUROR ISRAEL: Yes.
THE COURT: Noah?
JUROR ISRAEL: Yes.
THE COURT: Kinsey?

JUROR ISRAEL: Yes.
THE COURT: And Lamb?
JUROR ISRAEL: Yes.
THE COURT: All right, would you indicate whether the numerical standing is towards more now towards a verdict or more further away from a verdict?
JUROR ISRAEL: *Close to a verdict.*
THE COURT: *On each of the defendants?*
JUROR ISRAEL: *Yes.*"
[R.T., Vol. XX, pp. 3162–3163.] [Emphasis supplied.]

**3.** "MR. KESSLER: (Defense Counsel) Could you give us the numberical [sic] standings?
THE COURT: As to Mr. Wiley it was seven–five. The same for Mr. Noah and the same as to Mr. Lamb. As to Mr. Kinsey it was nine–one–two. Mr. Collins was nine–zero– and three undecided.
MR. KESSLER: Thank you."
[R.T., Vol. XX, p. 3164.]

fendant without indicating which party was in the majority. After supplying the court with this information, the jury retired and deliberated two additional hours before reconvening the following morning. On the third day of deliberations, the jury was again assembled, this time in the presence of defendants and counsel. The court asked if any verdicts had been reached and the foreman responded in the negative. When asked whether the jury should be dismissed, however, the foreman stated that he believed the jury should continue with its deliberations. The judge then asked if there had been any change in the numerical standing as to each defendant. When the foreman advised that there was such a change, the court asked whether the numerical standing is ". . . more now toward a verdict or more further away from a verdict." The foreman responded that the jury was closer to a verdict. *Counsel made no objection to the exchange between the judge and the jury foreman.* Instead counsel asked the court to reveal in open court the numerical standing of the jury on each defendant as outlined to the court on the previous occasion when defendants and counsel were not present. (See Footnotes 2 & 3, supra.) No *Allen*-type instruction was given.

Inasmuch as I would hold that *Brasfield* is no longer controlling, I am led to the conclusion that the absence of the appellants and their counsel at the time when the court first inquired as to the numerical standing of the jury as to each appellant, while a technical violation of Rule 43, was harmless and did not affect the substantial rights of the appellants under Rule 52, F.R. Crim.P.

It is uniformly held that Rule 43, F.R. Crim.P., requiring the presence of defendants at all stages of the trial, must be read in the light of the harmless error rule as stated in Rule 52(a), F.R.Crim.P. *United States v. Gradsky,* 434 F.2d 880, 884 (CA5 1970), *cert. denied* 401 U.S. 925, 91 S.Ct. 884, 27 L.Ed.2d 828 (1971); *United States v. Schor,* 418 F.2d 26, 30 (CA2 1969). If, as in *United States v. Florea,* 541 F.2d 568, 573 (CA6 1976), *cert. denied* 430 U.S. 945, 97

S.Ct. 1579, 51 L.Ed.2d 792 (1977), *rehearing denied* 431 U.S. 925, 97 S.Ct. 2201, 53 L.Ed.2d 240, defendants were not prejudiced because they were absent when the district judge excused one juror, substituted an alternate, and sequestered the jury, then certainly the appellants were not prejudiced by their absence on the occasion of the judge asking simple questions with reference to the jury's numerical division.

Moreover, I would hold that appellants did not have a constitutional right, as distinguished from a procedural right, to be present at the time and under the circumstances then and there existing. The error of the court, if any, in making the inquiries in my opinion was harmless.

### III.

Prior to the beginning of the *voir dire* examination, appellant Noah's counsel made a statutory challenge to the racial composition of the group of prospective jurors. After a hearing lasting in the neighborhood of seven minutes, the court denied the motion. On the morning of the hearing, the court heard certain motions and then recessed until 1:30 P.M. At 11:00 A.M. the court resumed the bench at the request of attorneys for Noah. They requested the court to reconvene, but did not notify the Marshals to return the appellants to the courtroom, nor did the attorneys make any objection to the absence of appellants or request their presence. The court did not know the purpose for which the attorneys asked it to reconvene. After reconvening, the court, for the first time, learned that the purpose was to make a motion challenging the method of selecting the entire jury panel.

Appellant Noah argues (1) that this challenge constitutes part of the empanelling process of the jury, (2) that Rule 43 thus guarantees him a right to be present, and (3) that the error was not harmless. I am convinced that this and other pretrial motions do not fall within the scope of Rule 43(a), but are governed by Rule 43(c)(3), which does not require the presence of a

defendant at a conference or argument upon a question of law. Irregardless, the error, if any, was harmless under Rule 52, F.R.Crim.P.

Moreover, I feel that the appellants' absence was, in fact, due to the failure of their attorneys to arrange for their presence.

Furthermore, the Western District of Washington has an approved plan for random jury selection made pursuant to the provisions of 28 U.S.C. § 1863. There is no challenge to the plan nor any effort on behalf of appellant to establish that a substantial deviation from the plan with reference to a cognizable group took place. In such case the court did not commit error in denying the motion. *United States v. Brady,* 579 F.2d 1121 (CA9 1978), *rehearing and rehearing in banc denied* August 8, 1978, *cert. denied* —— U.S. ——, 99 S.Ct. 849, 59 L.Ed.2d 41 (1979) [Montana Plan]; *United States v. Potter,* 552 F.2d 901 (CA9 1977) [Nevada Plan]. In the former case, we said, among other things, that a defendant challenging a grand or petit jury must prove either a systematic exclusion of an identifiable class or a substantial deviation between the identifiable groups and that before a court can make a meaningful comparison for determining a substantial deviation in a plan for grand and petit jury selections in federal court, those challenging the make up of the jury must offer substantial proof on the deviation or division basis. *Brady* at 1134. No such showing was made in the record before us. This assignment of error is meritless.

Our circuit in *United States v. Calaway,* 524 F.2d 609 (CA9 1975), in commenting on a procedure utilized prior to the commencement of the selection of the trial jury to eliminate jurors who were obviously disqualified emphasized this eminently practicable procedure as employed by the trial judge and held that it could not *reasonably be considered a part of the criminal trial.*

### IV.

Noah suggests that there is insufficient evidence connecting him with the conspiracy as charged in the indictment. True enough, the evidence linking him to the conspiracy is mostly circumstantial and not as clear as the evidence against the other appellants. However, it can be said that the evidence of a conspiracy is substantial. The conspiracy is established by independent evidence. Circumstantial evidence is not inherently less probative than direct evidence. *United States v. Turner,* 528 F.2d 143, 162 (CA9 1975), *cert. denied sub nom. Grimes v. United States,* 423 U.S. 996, 96 S.Ct. 426, 46 L.Ed.2d 371 (1975). Time and time again, we have said that we have no power to disturb a jury's verdict where it could rationally conclude from the evidence presented and the inferences drawn therefrom that guilt was established beyond a reasonable doubt. *Turner, supra,* at 162; *United States v. Irion,* 482 F.2d 1240, 1248 (CA9 1973), *cert. denied* 414 U.S. 1026, 94 S.Ct. 454, 38 L.Ed.2d 318 (1973); *United States v. Nelson,* 419 F.2d 1237, 1241 (CA9 1969). In such a case evidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, *even though the connection is slight,* is sufficient to convict him with knowing participation in the conspiracy. *United States v. Dunn,* 564 F.2d 348, 357 (CA9 1977).

That a conviction may be based on the uncorroborated testimony of an accomplice is settled law. *United States v. Turner, supra,* at 161, *United States v. Daniel,* 459 F.2d 1029, 1030 (CA9 1972). Noah's principal contention on this point is that since coconspirator Vernice Garrett was acquitted, her testimony linking him to the conspiracy should be disregarded and, consequently, he should be acquitted. Appellant cites no authority to support his contention. For that matter, the available authority is to the contrary. *Kamanosuke Yuge v. United States,* 127 F.2d 683 (CA9 1942), *cert. denied sub nom. Mateus v. United States,* 317 U.S 648, 63 S.Ct. 43, 87 L.Ed. 522, a case in point, holds that the fact that a jury fails to convict one defendant on the conspiracy charges does not in and of itself render testimony of that person's acts and declarations inadmissible as against other

alleged coconspirators. 127 F.2d at 689. The principle stated in *Kamanosuke* is fully supported by the United States Supreme Court decisions in *Hamling v. United States,* 418 U.S. 87, 101, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), and *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932). *See also United States v. Martorano,* 557 F.2d 1, 8 (CA1 1977), *cert. denied* 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978).

My review of the entire record convinces me that there is substantial evidence to sustain Noah's conviction. I am satisfied that the jurors reasonably could decide that Noah was guilty as charged. In determining the sufficiency of the circumstantial evidence in a case such as this, the question is not whether the evidence excludes every hypothesis of guilt except that of guilt, but rather whether the trier of fact could reasonably arrive at its conclusion. *United States v. Eaglin,* 571 F.2d 1069, 1076 (CA9 1977).

I need not here cite the authorities supporting the well established rule that in reviewing the evidence to determine whether it was sufficient to allow a jury to convict, we must view it in the light most favorable to the government.

The following quotation from *United States v. Dunn, supra,* 564 F.2d at 357 (CA9 1977), is worthy of mention on Noah's claim. We quote:

> "In such instances, given the clandestine character of such projects, slight additional evidence suffices to base an inference that one who had been shown beyond a reasonable doubt to be a participant was as well a *knowing* participant." At p. 357, fn. 21.

## V.

The government, in its case in chief, introduced evidence showing that appellant Lamb induced Ms. Emery to participate in the conspiracy by telling her that he owed money to another penitentiary inmate for narcotics and that if he did not pay the debt, he would be killed. Lamb also told her that with some of the left over money,

they could purchase additional narcotics for distribution. In order to corroborate Emery's testimony, whose credibility was under severe attack, the government offered evidence that Lamb was involved in previous narcotics transactions. This evidence was offered to explain Lamb's motive and intent in participating in the conspiracy to defraud the government. Rule 404(b), F.R.E., permits the use of this type of evidence. *See Spencer v. Texas,* 385 U.S. 554, 560–61, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); *United States v. Brashier,* 548 F.2d 1315, 1325–26 (CA9 1976); *United States v. Nichols,* 534 F.2d 202, 204 (CA9 1976). This contention is groundless.

## CONCLUSION

I would affirm the judgment of the lower court and hold: (1) that *Brasfield* is not controlling on the record before us; (2) that the provisions of Rule 52(a) and (b), F.R. Crim.P., control on this record; (3) that the action of the court in interrogating the jury on its numerical division in the absence of defendants and their attorneys was at most harmless error which was cured by the later interrogation along the same line in the presence of counsel, to which counsel not only failed to object but asked the court to reveal the numerical division of the jury as ascertained on the first interrogation. Alternatively, the actions of the district court would not qualify for reversal under the plain error provisions of Rule 52(b), F.R. Crim.P.; (4) that the other assignments of error are groundless.