Roger Allen MARSH,
Petitioner-Appellant,

v.

Hoyt C. CUPP, Superintendent, Oregon
State Penitentiary,
Respondent-Appellee.

No. 75–2326.

United States Court of Appeals,
Ninth Circuit.

June 15, 1976.

---

1. Appellant cites Regina v. Dolan, 6 Cox.Crim. Cas. 449 (Eng.1855) and People v. Jaffe, 185 N.Y. 497, 78 N.E. 169 (1906).

Charles Robinowitz (argued), of Portland, Or., for petitioner-appellant.

Rhidian M. Morgan, Asst. Atty. Gen. (argued), Salem, Or., for respondent-appellee.

## OPINION

Before BARNES, DUNIWAY and SNEED, Circuit Judges.

BARNES, Senior Circuit Judge:

This is an appeal from the denial of a petition for a writ of habeas corpus by a federal district judge where the petitioner was a state prisoner.

Issues listed in ¶ 10(a), (b), (c), and (d), of the appellant's Petition for Writ of Habeas Corpus (after his state court conviction for rape), each allege a denial of "due process."

Paragraph 11(a) sets forth, in factual support of 10(a), that the "Allen Charge" was given the jury twice, allegedly in error the second time.

Paragraph 11(b) sets forth, in support of 10(b), that when the jury was twice instructed after becoming deadlocked, it was not re-instructed as to the burden of proof being on the state.

Paragraph 11(c) sets forth in support of 10(c) an argument that the evidence to convict was insufficient.

Paragraph 11(c) sets forth in support of 10(d) that it was error to instruct the jury that "Every witness is presumed to speak the truth."

After Marsh' conviction, in 1970, his counsel took an appeal. His conviction was affirmed from the bench by the Oregon State Court of Appeals on June 21, 1971 (485 P.2d 1253), and by the Supreme Court of Oregon in a careful 12-page opinion on November 5, 1971 (490 P.2d 491).

Paragraph 11(a) refers to the "Allen Charge," which we will consider later.

■ Paragraph 11(b) (failure to reinstruct burden of proof on state): This was not raised on appeal in the State Court, but could have been. The United States Magistrate (to which the petition for habeas corpus was referred) found it to be without merit:

"It was not necessary for the trial judge to reinstruct the jury on the burden of proof. Jury instructions must be considered as a whole, *United States v. Tocki*, 469 F.2d 655 (9th Cir. 1972), and an examination of the entire set of instructions given to the jury shows that the trial judge adequately informed the jury of the state's burden of proof." (C.T. p. 15, lines 10–16).

*See also United States v. Marshall*, 532 F.2d 1279 (9th Cir. 1976).

■ Paragraph 11(c):

The insufficiency of the evidence, according to petitioner and appellant, was raised by his counsel before the Oregon Supreme Court. That court states that at oral argument, the Public Defender, representing petitioner and appellant, "conceded . . . that the state's evidence was sufficient to support the verdict." Nevertheless, the Oregon Supreme Court examined on its own the entire record and found "there was ample testimony, if believed by the jury, to corroborate the testimony of the complaining witness." (*State v. Marsh*, p. 492, and particularly Note 1).[1]

When this 11(c) issue was passed upon by the United States Magistrate, he found it to be without merit. "An examination of the record shows that there was sufficient credible evidence for the jury to find the petitioner guilty of the offense (C.T. p. 14). Habeas Corpus relief will be granted only if the record is totally devoid of such evidence. *Freeman v. Stone*, 444 F.2d 113 (9th Cir. 1971)."

■ Paragraph 11(d) asserts that the trial judge "switched the burden of proof"

1. Petitioner seeks to bolster the point 11(c) by stating that "[1] petitioner would have had to rape the prosecutrix in an extremely short amount of time. . . . [2] in a well-lighted area. Further, [3] petitioner's trial counsel twice moved for a directed verdict of this point, and [4] the jury deliberated for over eight hours, [5] to reach a non-unanimous verdict."

 None of these five facts establish that the act of rape was "contrary to all human experience."

2. *Id.*, 476 F.2d 845; reversed *Cupp v. Naughten* in 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973).

3. 414 U.S. 141, dissenting opinion, p. 151, 94 S.Ct. 396, p. 402, note 1:

 "Since here no defense witnesses were called . . . ."

4. Knowledge: the *fact* or *condition* of knowing, or being aware of, something. Webster's Dictionary.

5. In the opening brief, counsel for appellant states:

 a. "The trial judge *probably knew* which party the split favored." (p. 1, line 4).

 b. "The jury was one vote from a verdict, the judge knew this and *probably knew* it favored the prosecution." (p. 5, lines 6–8).

when he instructed the jury: "Every witness is presumed to speak the truth." (C.T. p. 3) The United States Magistrate stated that this issue had no merit:

"While this instruction has been disapproved, *Naughten v. Cupp*, 476 F.2d 845, No. 71–3065, (9th Cir. 1972),[2] here the petitioner called his own witnesses and testified in his own behalf. Under these circumstances, this instruction did not deny the petitioner due process of law. *Capitan v. Cupp* [No. 71–3065, unpublished opinion] (Ore.1972)."

The magistrate correctly emphasized the fact (as did the Supreme Court in reversing this court's opinion),[3] that it was one matter if no defense witnesses were called, while quite another if defense witnesses were called. And here they were.

■ We turn to the alleged error (¶ 11(a)) in the giving of the "Allen charge."

Before we get into it, however, we observe that we are concerned about repeated reference in appellant's opening brief to the facts surrounding the giving of the second "Allen" instruction, *i. e.*, the "knowledge"[4] of the trial judge with respect to which side had the 9–3 majority.[5]

c. "The trial judge *probably realized* that the nine to three jury split favored the prosecution. (Tr. 230–32)." (p. 7, lines 2–3).

d. "He (the judge) *probably knew* it (the jury 9–3 split) favored the state. (Tr. 230–32)." (p. 8, line 6).

e. "The *apparent knowledge* of which side the split favored." (p. 8, line 9).

f. ". . . with . . . the judge *aware* that . . . this verdict *probably* would favor conviction. . . ." (p. 10, lines 18–20).

In appellee's brief, the flat statement is made (in reply to appellant's "guess" that the court "probably knew" in whose favor the jury leaned): "There is nothing in the record to demonstrate that the court had any idea which vote the majority favored."

The district judge, in denying the appellant's petition, found against any "probable knowledge" suggested by appellant. Judge Belloni stated: "The trial judge had no way of knowing whether the majority favored the prosecution or the defense." (C.T. 45).

We have carefully examined the record (particularly pages 230–37, cited and relied upon by appellant as "proof") and *find nothing to indicate any knowledge whatsoever on the part of anyone as to which party the 9–3 jury favored.* At best, the record indicates the prosecution

We turn to the rule laid down by the Supreme Court in *Jenkins v. United States*.[6] There the simple test, as conceded by the Solicitor General, is "whether in its context and under all the circumstances of this case the statement was coercive." In *Jenkins*, it was deemed coercive.

The only portion of the charge quoted by the Supreme Court as being coercive was: "You have got to reach a decision in this case." The entire instruction is quoted in the opinion of the court of appeals.[7] In addition to the language quoted by the Supreme Court, the instruction contained the statement: "Now I am not going to accept this," immediately before the line relied upon by the Supreme Court. And as the dissent in the D.C. Circuit stated, this instruction was different from the "Allen charge," because "at least in the 'Allen charge,' after the jury is told that it is its duty to reach a verdict, the words 'if (you) can conscientiously do so' are added. Here the jury was simply told flat out: 'You have got to reach a decision in this case.'"

In the second "Allen charge" given, the jury was carefully advised that everyone on the jury must still follow "his own" conscience in determining whether or not it could agree, immediately after the phrase "it is incumbent upon you to reach a verdict." The Oregon Supreme Court found the instruction as given (a) was a

*"modified"* form of the "Allen charge," and (b) was a *"balanced"* charge.

The Oregon Court then stated:

"Considering these instructions as a whole, we are of the opinion that they were not so extreme or otherwise improper as to deprive a defendant of his constitutional right to a fair trial or otherwise to violate any of his constitutional rights. The reference to a retrial if the jury did not reach a verdict was improper, however. Also improper was the statement that 'it is incumbent upon you to reach a verdict' but that statement was immediately 'followed' by the reminder that no juror was expected to vote other than 'according to [his] own conscience.' In essence, this charge was quite similar to the ABA approved charge that each juror has the 'duty' to 'deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment.'"

The Oregon court then considered the "Factual Setting" of the second or supplemental instruction, and held that because the jury, when asked whether it could arrive at a verdict within thirty minutes, did not answer the court's query, but requested further instructions on what constituted rape,

"This would indicate that upon receiving such instructions the jury expected that it would, in all probability, be able to

---

was more optimistic than the defense. Whether such feeling, not on the part of the judge, but on the part of both counsel, was due to the evidence introduced, or to the impression as to truthfulness each counsel believed had been made on the jury by the various witnesses, is pure speculation on each counsel's part. By no stretch of the meaning of the word "knowledge," could counsel on either side know how the jury stood. The trial judge, being perhaps more experienced than counsel, could better "guess", but never "know", how the jury stood.

g. Again in his reply brief (p. 1, lines 1–3) without citing authority or testimony, the appellant, for the seventh time states "the trial judge must have realized the 9–3 jury split favored the prosecution." We cannot agree.

h. For the eighth and ninth times, appellant, in his reply brief argument, returns to his whip-

ping boy—the trial judge's *probable knowledge* (p. 2, lines 13–4, and lines 23–25).

i. And in the tenth reference (p. 4, lines 17–23) in the appellant's brief, it is stated: "Neither of the opinions considered the fact that the trial judge *probably knew* which side the 9–3 jury split favored when he gave the second Allen charge. Altho the trial judge said nothing in the record to indicate his knowledge, *he was aware of the strong opinions of the defense and the prosecutor, and this court should consider this fact.*"

Again, no authority is cited for such requested action on our part (to consider how counsel "felt"), and we decline to consider such a preposterous argument.

**6.** 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957.

**7.** Note 2, 330 F.2d 220, 221.

arrive at a verdict within thirty minutes. Thus, it would also appear that *under these circumstances the fact that the jury returned its verdict within a few minutes after receiving the final instructions by the trial court does not demonstrate that it was 'coerced' into returning a verdict* of guilty by the further instruction urging it to reach a verdict if it could conscientiously do so." (emphasis added)

The Oregon Supreme Court then concluded:

"In this 'factual context' and under these circumstances, and considering also the 'modified' and 'balanced' nature of the supplemental instructions as given by the trial judge in this case, we hold that while it was improper to give such instructions, any error in doing so was not so serious or of such a nature as to violate any of defendant's constitutional rights."

There being no constitutional error, the Oregon Court then held that the conviction should be affirmed in the absence of any exceptions to either "Allen" instruction.

"This court has held repeatedly, in criminal as well as in civil cases, that judgments will not be reversed for errors in instructions where no proper exceptions were taken to such instructions unless, 'upon examination of the entire record, the court can say that the error is manifest and that the ends of justice will not otherwise be satisfied.' "

Appellant concedes that he took no exception to the first "Allen charge." He takes no issue with the statement that three hours later, he again consented [8] to have the jury answer the court's enquiry as to its current vote. The message explicitly precluded any mention in the jury's answer as to whom the jury favored.[9] The note came from the jury "Nine to three". The court then sent a note: "Is there any reasonable chance of arriving at a verdict in the next thirty minutes?" (This again was with consent of counsel.) (R.T. p. 234). Without answering the court's enquiry, the

jury asked for a further specific instruction on what constituted rape.

The court showed this note to both counsel, and asked each to "state your position on the record."

Trial counsel for appellant moved for a mistrial. (R.T. p. 231). The government opposed the motion. The court stated that he proposed to reinstruct the jury "on the substantive instruction on rape." The government had no objection; defense counsel took an exception "*to the additional instruction on rape.*"

The court then reinstructed the jury on rape, and added the second "Allen-like charge," as modified. The jury retired and the following occurred:

"The Court: Mr. Rask, in addition to the exceptions previously taken I would appreciate it if you would state for the record any additional exceptions or lack of instructions just given.

"Mr. Rask: Your Honor, I feel that at this time, because of the lateness of the hour, because the jury has been deliberating so long that the court should have in addition given the instruction about reasonable doubt and about the State having the burden, because the court did not give that instruction, I would take an exception to the instructions."

Thus, the defendant took no exception to either the first "Allen charge" instruction at about 8:45 P.M., or to the second partial "Allen charge" instruction at about 12:10 A.M. At 12:28 A.M., the jury reported to the bailiff it had a verdict. At that time counsel for defendant moved for a mistrial in this language:

"Your Honor, at this time I wish to renew my motion for a mistrial on the basis that the previous instructions *to which the defendant has taken exceptions to* may have unduly influenced the jury to be prejudiced of this client. In addition to the instructions that the defendant would have requested, that is the instruc-

---

8. R.T., p. 230, line 24 to p. 231, line 1.

9. Thus, *Brasfield v. United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926) is not controlling.

tions on the burden of proof that the State must carry, reasonable doubt, the defendant feels that the court should have, in order to preserve the fairness of the jury's deliberations, also, reinstructed the jury on the fact that the defendant is presumed to have been innocent." (emphasis added)

Thus, the only instructions to which defense counsel referred were those to which he had previously taken exceptions, *i. e.*, "about reasonable doubt and about the State having that burden" (R.T. 235), and "the presumption of innocence." (R.T. 236).

The Oregon Supreme Court stated: "No exception was taken to this [second] instruction as an 'Allen' or 'Dynamite' charge, as now contended." (*idem.* p. 494), and ". . . defendant *did not take exceptions to either of the supplemental instructions* as given by the court in this case," (*idem.* p. 501) and finally:

"We also hold that in the absence of constitutional error defendant's conviction in this case must be affirmed, even though it was improper to give such instructions, because of the absence of exceptions to the giving of such instructions. This court has held repeatedly, in criminal as well as in civil cases, that judgments will not be reversed for errors in instructions where no proper exceptions were taken to such instructions unless, 'upon examination of the entire record, the court can say that the error is manifest and that the ends of justice will not otherwise be satisfied.'

"In this case, while we do not approve of the supplemental instructions as given by the court, and expressly disapprove of them, we have examined the entire record and cannot say that any error in the giving of such instructions was 'manifest', in view of the many decisions by other courts, including previous decisions by this court, approving the giving of even stronger supplemental instructions. Neither can we say, upon examination of the entire record in this case that unless this conviction is reversed 'the ends of justice will not be served,' as also re-

quired under the foregoing rule before considering error to which no exception was taken in the trial court.

"In this case, at least when the first supplemental instructions were given and the jury was 'split six to six', those instructions were as favorable to the defendant as they were to the State. And even when the final supplemental instructions were given in this case, defendant's attorney, who had acquiesced in the giving of the original supplemental instructions and who was able and experienced, may well have deliberately withheld exceptions to the terms of those instructions under the strategy that the defendant might obtain complete acquittal as a result of such instructions. For these reasons, this was particularly the type of case in which a defendant should not be permitted to withhold exceptions at the time of trial and then urged on appeal, and for the first time, that the judgment should be reversed because of error in the giving of such instructions."

We agree with the conclusions of the Oregon Supreme Court, and the District Court Judge. The circumstances suggesting a possible deadlocked jury are far stronger here than were those in *United States v. Contreras*, 463 F.2d 773 (9th Cir. 1972). Accordingly, we cannot say that either "instruction was not clearly warranted." *See United States v. See*, 505 F.2d 845 (1974), which at p. 854 quotes *Sullivan v. United States*, 414 F.2d 714, 716 (9th Cir. 1969).

We therefore *Affirm* the District Court.