**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Douglas Earl FOSSLER,
Defendant-Appellant.**

**No. 78–5446.**

United States Court of Appeals,
Fifth Circuit.

June 20, 1979.

James R. Gillespie, San Antonio, Tex., for defendant-appellant.

Jamie C. Boyd, U. S. Atty., LeRoy Morgan Jahn, John E. Murphy, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before SIMPSON, TJOFLAT and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Douglas Earl Fossler appeals from his conviction on a two-count indictment charging him with the unlawful possession of a bomb not registered to him and not identified by a serial number in violation of 26 U.S.C. §§ 5861(d) and 5861(i). Following the jury's rendition of guilty verdicts on both counts, the District Court suspended imposition of sentence and placed Fossler on probation for a period of five years. Fossler presents three issues on appeal: (1) whether the District Court erred in denying his motion to suppress evidence under the "silver platter" doctrine's rejection in *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); (2) whether the District Court erred in failing to dismiss the indictment under the reasoning in *Petite v. United States*, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960), and *Rinaldi v. United States*, 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977); and (3) whether the District Court erred in delivering the *Allen*[1] charge on two separate occasions when the jury indicated it could not reach a verdict. We find no merit in Fossler's first two arguments, but his *Allen* charge contention is persuasive. We therefore reverse his conviction.

The evidence shows that at approximately six o'clock in the evening of May 30, 1976, an officer of the Kerrville, Texas, Police Department was notified by radio that there was a reckless driver in the 600 block of Lois Street. When the officer arrived at the 600 block of Lois Street, he saw Fossler leaning against his car, which was sitting in the front yard of a residence and was only a few inches away from a tree. A small girl had been up in the tree when Fossler ran his car onto the lawn and under the tree's boughs.

The officer approached Fossler and asked him for his driver's license. The officer noticed that Fossler had difficulty trying to stand, had bloodshot eyes, and slurred his speech. When the officer asked Fossler if he had been drinking, Fossler replied, "Yes." The officer also talked to witnesses who said they had seen Fossler drive down the street very erratically, weave from side to side, and finally stop next to the tree. The officer came to the conclusion that Fossler was intoxicated and arrested him for driving while intoxicated.

---

1. *Allen v. United States*, 164 U.S. 492, 501–02, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

Shortly thereafter, another officer arrived to assist the arresting officer. The assisting officer was asked by a man who appeared to be the owner of the house if the car could be removed from the lawn. The assisting officer then asked Fossler whether he preferred that the car be towed to the police station or driven there by the officer. Fossler responded by giving the assisting officer the car keys.

The assisting officer opened the car door and looked under the front seat for open liquor or beer bottles that might spill enroute. When his brief search revealed a .22 caliber pistol under the driver's seat, he decided to drive the car to the station before taking an inventory of its contents pursuant to standing Police Department orders regarding impounded cars. As the officer drove the car to the station, he noticed an object, similar in size and shape to a softball, on the passenger side of the front seat. When the officer later inventoried the contents of the car, he discovered that the round object was a homemade bomb.[2] The sphere was covered with masking tape and a piece of fuse was attached to it. The evidence presented at trial established that the homemade bomb was designed as a weapon with no legitimate lawful purpose. Although Fossler, who holds a graduate degree in biophysics, claimed that he made the bomb only to injure coyotes, he admitted that it was a dangerous device containing a blasting cap and could at least mutilate a person's hand. He also admitted that he told the police officer to drive his car, in which the bomb was found, to the station.

In addition to the driving while intoxicated charge, Fossler was charged in the State District Court with possession of a destructive weapon. Fossler's motion to suppress evidence in the State proceeding was granted. The District Attorney thereafter filed a motion to dismiss the indictment, which was granted. Fossler was subsequently charged with the federal offenses alleged in the instant indictment. He filed a motion to suppress evidence and a motion to dismiss the indictment on the basis of *Petite v. United States*, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960), but both motions were denied. The trial and conviction which followed led to this appeal.

## I.

In arguing that the District Court erroneously denied his motion to suppress evidence, Fossler points out that the State Judge suppressed the evidence and concludes that he did so because Fossler's initial arrest by the state officer was unlawful and the subsequent search was therefore illegal. Thus, he argues, the rejection of the "silver platter" doctrine in *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), prohibits the use of the same excluded evidence in a subsequent trial.

The holding of *Elkins v. United States* is not, however, wholly consistent with Fossler's argument:

[W]e hold that evidence obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment is inadmissible over the defendant's timely objection in a federal criminal trial. In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed.

364 U.S. at 223–24, 80 S.Ct. at 224 (footnote omitted). The District Court was thus correct in making an independent inquiry and determination regarding the suppression of evidence. *Accord, United States v. Garrett,*

---

2. The inventory also revealed a .38 caliber pistol under the passenger seat of the car, but neither the .38 caliber pistol nor the .22 caliber pistol, found before the car was driven to the station, are involved in the federal charges against Fossler.

565 F.2d 1065, 1068 (9th Cir. 1977), *cert. denied*, 435 U.S. 974, 98 S.Ct. 1620, 56 L.Ed.2d 67 (1978), *cert. denied sub nom., Morgan v. United States*, 435 U.S. 924, 98 S.Ct. 1487, 55 L.Ed.2d 517 (1978); *United States v. Bedford*, 519 F.2d 650 (3d Cir. 1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323 (1976).

■ The District Court was correct as well in determining that, under Texas law,[3] Fossler's arrest was lawful. Fossler asserts that he could not have been properly arrested for driving while intoxicated because the officer did not see him driving, but rather found him leaning against his stopped car. Article 14.01(b) of the Texas Code of Criminal Procedure allows a warrantless arrest for a misdemeanor, which driving while intoxicated is, only when the offense is committed in the arresting officer's presence or within his view. The Texas Court of Criminal Appeals has indicated, however, that an arrest for driving while intoxicated is not necessarily invalid merely because the arresting officer did not see the. defendant drive his car, since the defendant may still be subject to a public intoxication charge. *Fletcher v. State*, 164 Tex.Cr.R. 321, 323, 298 S.W.2d 581, 582 (1957). The Fifth Circuit has recognized that where a defendant was arrested for the "wrong" offense, the arrest is nonetheless valid where the crime for which he was arrested and the crime for which there was probable cause to believe he had committed are closely related and there is no proof of sham or fraud. *Mills v. Wainwright*, 415 F.2d 787, 790 (5th Cir. 1969). Hence, our inquiry focuses on whether there was probable cause to arrest Fossler for public intoxication.

■ Fossler contends that because he was in the front yard of a *private* residence when he was arrested, there was no probable cause then existing to arrest him for *public* intoxication.[4] In view of his status as an uninvited stranger on the front lawn, his contention is unpersuasive. *See Pugh v. State*, 55 Tex.Cr.R. 462, 117 S.W. 817 (1909). The Texas courts have traditionally held that a place may be a public one or not according to the circumstances. *See Clinton v. State*, 64 Tex.Cr.R. 446, 142 S.W. 591 (1912). To hold that there was no probable cause to arrest Fossler for public intoxication merely because he had moments before driven his car from the public street up onto a stranger's lawn would be unreasonable, and we decline to do so.[5]

■ Having determined that Fossler's arrest was valid, we turn now to the lawfulness of the discovery of the homemade bomb in his car. Fossler's car was legitimately impounded and subsequently subjected to a routine inventory search. Indeed, there is every indication that Fossler chose to have his car driven to the police station by the police officer and that he willingly handed the keys to the officer for that purpose. The evidence discovered in the course of the inventory of the car is admissible against Fossler under *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Moreover, the officer who conducted the inventory was rightfully in position to observe the homemade bomb in plain view on the front seat

---

3. The lawfulness of an arrest by state officers is determined by the law of the state where the arrest takes place, subject to federal constitutional standards. *Ker v. California*, 374 U.S. 23, 37, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *United States v. Lipscomb*, 435 F.2d 795, 798 (5th Cir. 1970), *cert. denied*, 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331 (1971).

4. The misdemeanor offense of "Public Intoxication" is defined at Tex. Penal Code Ann. tit. 9, § 42.08(a) (Vernon 1974): "An individual commits an offense if he appears in a public place under the influence of alcohol or any other substance, to the degree that he may endanger himself or another."

"Public place" is defined at Tex. Penal Code Ann. tit. 1, § 1.07(a)(29) (Vernon 1974): "any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops."

5. Fossler does not and could not seriously contend that the two remaining elements of public intoxication, his being under the influence of alcohol and his being a danger to himself or another, are in question here.

of the car as he examined the object in order to classify it for the inventory listing. The bomb was thus properly seized and admitted into evidence against Fossler under the plain view doctrine as well. *See Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *United States v. Hall,* 565 F.2d 917, 921–22 (5th Cir. 1978).

## II.

■ Fossler next contends that the District Court erred in failing to dismiss the indictment under the reasoning in *Petite v. United States,* 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960), and *Rinaldi v. United States,* 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977). The situation this Circuit was confronted with in *United States v. Nelligan,* 573 F.2d 251 (5th Cir. 1978), is very close to that found in the instant case. Fossler urges, as did Nelligan, application of the Department of Justice's *Petite* policy, but Fossler's federal prosecution and conviction followed an abortive state prosecution for the same unlawful conduct, as did Nelligan's. In neither case did the Government seek leave to implement the policy. On the basis of our reasoning and holding in *Nelligan,* rejecting Nelligan's *Petite* policy claim, we conclude that Fossler's *Petite* policy argument is groundless. *See United States v. Nelligan,* 573 F.2d at 254–55. *Accord, United States v. Frederick,* 583 F.2d 273, 274 (6th Cir. 1978); *United States v. Musgrove,* 581 F.2d 406, 407 (4th Cir. 1978); *United States v. Fritz,* 580 F.2d 370, 374–75 (10th Cir.), *cert. denied,* —— U.S. ——, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978); *United States v. Thompson,* 579 F.2d 1184 (10th Cir.), *cert. denied,* —— U.S. ——, 99 S.Ct. 257, 58 L.Ed.2d 243 (1978); *United States v. Wallace,* 578 F.2d 735, 739–40 (8th Cir.),

*cert. denied sub nom. Mitchell v. United States,* —— U.S. ——, 99 S.Ct. 263, 58 L.Ed.2d 246 (1978); *United States v. Martin,* 574 F.2d 1359, 1360–61 (5th Cir.), *cert. denied,* —— U.S. ——, 99 S.Ct. 456, 58 L.Ed.2d 425 (1978).

## III.

Fossler finally contends, and we agree, that the District Court abused its discretion in delivering the *Allen* charge on two separate occasions when the jury indicated it could not reach a verdict.

The jury retired at about 12:00 noon on Friday. At 5:10 P.M., the jury foreman sent a note to the trial judge telling him that the jury could not reach a unanimous decision. The judge then gave an *Allen* charge orally with no objection by Fossler. At 9:55 P.M., the jury foreman again sent word to the judge, telling him that the jury could not reach a verdict. The trial judge, without objection by either party, then sent the jury home for the weekend. On Monday, at 9:30 A.M., court reconvened and the trial judge gave the jury the full written charge minus the *Allen* charge. At 2:25 P.M., the jury foreman for a third time sent word to the judge that the jury could not agree to a verdict. The judge then, over the objection of Fossler, sent the jury a written copy of the *Allen* charge he had previously given orally. A verdict of guilty was returned about an hour later.

In *United States v. Bailey,* 480 F.2d 518 (1973), the Fifth Circuit, *en banc,* approved the *Allen* charge within the limitations established by previous decisions. The District Court's delivery of the *Allen* charge, as first given, was within the acceptable bounds set by this Circuit's decisions. The *Allen* charge given by the District Court, reproduced below,[6] is virtually identical to

6. The Court desires to give this additional instruction to the members of the jury; I wish you would pay heed to it.

Now, while undoubtedly, members of the jury, the verdict of a jury should represent the opinion of each individual juror, it by no means follows that opinions may not be changed by conference in the jury room. The very object of the jury system is to secure unanimity by comparison of views and by arguments among the jurors themselves. Every juror should listen with deference to the arguments of the other jurors, and with a distrust of his or her own judgment if he or she finds the larger majority of the jury takes a different view of the case than that which he or she himself or herself takes. No juror should go to the jury room with a blind determination that the ver-

the charge approved in *United States v. Bailey*, 468 F.2d 652, 657 n. 5, *aff'd on rehearing en banc*, 480 F.2d 518 (5th Cir. 1973). The District Court carefully and commendably heeded our observation in *United States v. Foshee*, 569 F.2d 401, 406 (5th Cir. 1978), "that risk of reversal is always great when a judge varies one jot or tittle from the standard *Allen* charge."

Unfortunately, however, there was no Fifth Circuit authority on point when the District Court later had to determine the prudence of repeating the *Allen* charge after the jury sent word to him a second and a third time that a verdict could not be reached. No Fifth Circuit case to date has dealt with the propriety of twice giving a traditional *Allen* charge over the defendant's objection.[7]

In three other circuits that have considered the question of giving the *Allen* charge twice, the circumstances have been different from those we are confronted with in this case. In *United States v. Kahaner*, 317 F.2d 459, 483–85 (2d Cir.), *cert. denied*, 375 U.S. 836, 84 S.Ct. 74, 11 L.Ed.2d 65 (1963), and *White v. United States*, 279 F.2d 740, 750 (4th Cir.), *cert. denied*, 364 U.S. 850, 81 S.Ct. 96, 5 L.Ed.2d 74 (1960), the Second and Fourth Circuits upheld the use of two *Allen* charges, but they specifically relied on the fact that the jury had requested that the instruction be repeated. Recently, in *United States v. Robinson*, 560 F.2d 507, 517–18 (2d Cir. 1977), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978), the Second Circuit again affirmed a conviction which had been obtained following a second "*Allen*-type" charge. Although they noted that the chances of coercion may increase with each successive appeal by the court to the jurors to try to reach a verdict, the Court was unwilling to hold that a second *Allen*-type charge is error *per se*. Instead, they opted for requiring a case-by-case determination of coercion. Applying that principle in *Robinson*, the Court focused on three factors in concluding that the effect of the second charge was minimal: (1) appellant's counsel failed to object; (2) the second charge was brief and mild in nature; and (3) the jury deliberated for three hours between the *Allen*-type charges and for more than four hours after the second such charge before reaching its verdict. The same "totality of the circumstances" test, based on the Su-

---

dict should represent his opinion of the case at that moment or that he or she should close his or her eyes to the arguments of the other jurors, who are equally honest and intelligent as himself or herself.

So I charge you that although the verdict must be the verdict of each individual juror and not a mere acquiescence in the conclusion of his fellows, yet you should examine the questions submitted with candor and with a proper regard and deference to the opinions of each other.

Now, it is your duty to decide this case, if you can conscientiously do so. No juror is expected to do violence to his or her own conscience. You should listen with a disposition to be convinced of each other's arguments. If a much larger number are for conviction, a dissenting juror should consider whether his or her doubt is a reasonable doubt, which made no impression upon the minds of so many men or women equally honest and intelligent as himself or herself.

Now, if, on the other hand, a majority of you are for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.

Now, having given you these additional instructions, it is my hope that you will return to the jury room and endeavor to reach a verdict. And with these instructions in mind, I am now going to ask you to return to the jury room and consider further your verdict.

7. The Government cites our decision in *United States v. Cook*, 586 F.2d 572 (5th Cir. 1978), as dispositive of the one-two *Allen* charge issue. We recognized in that case that appellant Cook criticized three "*Allen*-type" charges to the jury, but we explicitly pointed out in our discussion that only one was properly delineated an *Allen* charge. Furthermore, there was no objection by Cook to any of the three charges, and the single *Allen* charge was found to have been mild and balanced. 586 F.2d at 576–78. Our decision in *Cook*, affirming that appellant's conviction, is thus inapposite to the question with which we are now confronted.

Our decision in *Government of Canal Zone v. Fears*, 528 F.2d 641 (5th Cir. 1976), is similarly inapplicable, for there also the appellant failed to object at trial to any of the three questioned sets of remarks made by the judge to the jury, only one of which qualified as a full *Allen* charge.

preme Court's language in *Jenkins v. United States*, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965), was employed by the Ninth Circuit in *Marsh v. Cupp*, 536 F.2d 1287, 1289–92 (9th Cir.), *cert. denied*, 429 U.S. 981, 97 S.Ct. 494, 50 L.Ed.2d 590 (1976), in upholding the use of two "balanced" *Allen* charges. In *Marsh*, however, defense counsel did not object when either of the *Allen* charges was given, and when counsel did move for a mistrial on the basis of the jury instructions, the *Allen* charges went unmentioned. 536 F.2d at 1291, 1292. Also, *Marsh* involved a habeas corpus proceeding, and thus the only question that was before the Court was the constitutionality of the *Allen* charges. These two distinctions were noted by the Ninth Circuit in a subsequent decision in *United States v. Seawell*, 550 F.2d 1159, 1163 n. 9 (9th Cir. 1977), *cert. denied*, —— U.S. ——, 99 S.Ct. 591, 58 L.Ed.2d 666 (1978). In *Seawell*, the Court was faced with a direct criminal appeal from a conviction obtained after an *Allen* charge had been repeated. The jury had not requested a repetition of the instruction and defense counsel had made timely objections. The Court elected, on the basis of their supervisory powers, to adopt a *per se* rule, "conclud[ing] that as a sound rule of practice it is reversible error to repeat an *Allen* charge in a federal prosecution in [the Ninth] circuit after a jury has reported itself deadlocked and has not itself requested a repetition of the instruction." 550 F.2d at 1163.

■ We do not elect to adopt such a *per se* rule. We opt instead to continue the practice of assessing the impact of the judge's statements in light of his language and the facts and circumstances which formed their context, just as we have previously done in evaluating the effect of a single *Allen* charge. *See Government of Canal Zone v. Fears*, 528 F.2d 641, 642 (5th Cir. 1976), *citing Jenkins v. United States*, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965).

■ We hold that, under the "totality of circumstances" test, the District Court's repetition of the *Allen* charge at Fossler's trial coerced a verdict from the jury. The jury indicated at three separate points in time, over a three day period, that it could not reach a decision. Defense counsel objected to the District Court's giving the isolated, written second *Allen* charge to the jury. Only one hour after the second *Allen* charge was sent to the jury, a guilty verdict was returned. In light of these circumstances, we must reverse Fossler's conviction and remand for a new trial.

REVERSED and REMANDED.