# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-60044

United States Court of Appeals
Fifth Circuit

**FILED**
February 7, 2018

Lyle W. Cayce
Clerk

DAWN L. BEST,

> Plaintiff - Appellant

v.

WILLIAM D. JOHNSON, President and Chief Executive Officer of Tennessee Valley Authority,

> Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:15-CV-86

Before WIENER, ELROD, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Dawn Best sued the CEO of the Tennessee Valley Authority alleging gender and age discrimination in violation of Title VII and the Age Discrimination in Employment Act. The district court held in favor of the defendant on age discrimination, and a jury gave a defense verdict on gender discrimination. We AFFIRM in part, and VACATE and REMAND in part.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-60044

## FACTUAL AND PROCEDURAL BACKGROUND

After working at the Tennessee Valley Authority ("TVA") for approximately twenty years, Dawn Best, a 56-year old woman, applied for a general manager of customer relations position in 2013. Previously, Best had served as both an engineer and a customer service manager. Best was not selected. After an extensive application process and multiple interviews, TVA selected John Malone, a younger male employee, for the position.

Best filed her complaint in 2015, alleging gender and age discrimination under Title VII and the Age Discrimination in Employment Act ("ADEA"). On September 19, 2016, the parties began a two-day trial. On the second day of trial, the parties rested, and TVA moved for judgment as a matter of law. The court granted the motion with respect to the age discrimination claim, but denied the motion with respect to the gender discrimination claim, allowing the claim to go before the jury. The jury ultimately returned a verdict in favor of TVA and the court thereafter entered judgment in favor of TVA for both the age and gender discrimination claims.

### I.     Jury Instructions

According to the district court's local rules, the parties were required to email proposed jury instructions to the court fourteen days before trial. *See* Northern District of Mississippi Local Rule 51. Best proposed two instructions, among others, relating to her theory of sex-plus-age discrimination. Plaintiff's Proposed Jury Instruction 14 ("P-14") stated, "[t]he court instructs the jury that discriminating against older females is unlawful sex discrimination." Plaintiff's Proposed Jury Instruction 16 ("P-16") similarly stated that "[i]n determining the issue of whether there was some legitimate, non-discriminatory reason for Plaintiff Dawn Best's discharge . . . it is not a defense that Defendant based the employment decision either upon Ms. Best's age, or

upon her race." We note that the instruction erroneously refers to Best's "discharge," when in fact she was passed over for a promotion.

Four days before trial, however, the district court held on TVA's motion that Best was not entitled to a jury trial for her ADEA age discrimination claim. Best's age discrimination claim therefore would be heard by the district court outside the presence of the jury. After partially granting TVA's motion on the age discrimination claim and denying on the gender discrimination claim, the court asked if the parties wished to submit additional jury instructions. Best expressed a desire to discuss Proposed Jury Instruction 14, and the court invited her to raise the issue at the jury charge conference.

Following a short recess, the court began the jury charge conference. TVA objected multiple times to any mention of age in the instructions because the ADEA claim would not be decided by the jury. Each time TVA objected, Best agreed that removing mention of age from the instructions would be appropriate. For example,

> THE COURT: Ms. Roelofs, do you have any objection to that P7?
> MS. ROELOFS [Defense Counsel]: I have an objection to the bottom. It mentions gender and age, and I think we need to strike that.
> MR. WAIDE [Plaintiff's Counsel]: She's right, Your Honor. It should be gender was a motivating factor. Age needs to come out of it.

Minutes after the conference concluded, however, the court initiated a second conference to address what the judge described as an apparent "disagreement on this age factor." The court began the second conference by confirming that Best had previously agreed to remove references to age from the instructions:

> THE COURT: . . . [I]t was my understanding that y'all didn't object to taking out age[.]
> MR. WAIDE: That's true, Your Honor.
> . . .

No. 17-60044

THE COURT: You agree that the instructions that you submitted having to do with age discrimination are inapplicable?
MR. WAIDE: Absolutely, yes, sir, inapplicable. Because age is a question for the Court.
THE COURT: For the Court. Okay.

Nonetheless, Best challenged Defendant's Proposed Jury Instruction 7 ("D-7"), which stated,

You have heard evidence about Plaintiff's allegation that she was discriminated against based on age. The only claim you are deciding is whether Plaintiff was discriminated based on her gender. You must disregard any evidence you hear that is related to Plaintiff's age. Any evidence you hear about Plaintiff's age claim cannot inform your decision about her gender clam.

In response to Best's objection to D-7, the court stated:

THE COURT: . . . I don't understand what your complaint is. As I read it, it's simply limiting the consideration of the jury in its liability stage to gender discrimination not age.
MR. WAIDE: Yes, sir . . . Here's the problem, it says you must disregard any evidence related to age. But I just — I don't believe that's correct, Your Honor, in view of the fact that discrimination against older women is sex discrimination. So those last two — I don't have any problem with the first two sentences; it's the last two sentences that are in error. The first two sentences are okay.
. . .
THE COURT: Okay. Suppose we just amend this and the first two sentences, I think — I think everybody would agree with — the second sentence says "the only claim you're deciding is whether the plaintiff was discriminated based on her gender." Do you agree with that?
MR. WAIDE: Yes, sir.

Accordingly, the court did not affirmatively instruct the jury to consider age in the gender discrimination claim, but at the same time, it did not instruct the jury to disregard age as a factor. At no point during the charge conference, nor before or after the court read the jury instructions, did Best specifically object to the court's decision not to include proposed instructions P-14 or P-16.

4

No. 17-60044

## II.   Allen *Charges*

After receiving their instructions, jurors began deliberations at 4:49 p.m. At 6:23 p.m., the jury returned with a verdict for TVA.  Best then requested a jury poll.  One juror, Sandra Clanton, stated she had not voted for the verdict. Refusing to accept a verdict that was not unanimous, the court instructed the jury to return to deliberations at 6:26 p.m.  After the jury retired, Best moved for a mistrial, arguing Ms. Clanton was now under "immense pressure" to return a defense verdict because of the public discussion of her vote.  The court denied the motion, noting that Best had been the one to request the jury poll leading to the public discussion.  The judge then stated that he would give an *Allen* charge "[i]f we don't hear from them shortly[.]"[1]

At 6:38 p.m., 12 minutes after retiring, the judge received a note from the jury asking what would happen if they could not agree.  The judge recalled the jury and issued a modified *Allen* charge before again retiring them at 6:42 p.m.  Best again moved for a mistrial, stating that "the parties were not asked about the position on the *Allen* charge.  I understand an *Allen* charge is normally proper.  But, in this case, . . . [i]t's bound to put enormous pressure on that one juror back there."  The court denied the motion, agreeing that although there was some level of pressure, the language of the charge instructed the jurors to adhere to their conscientious beliefs.

At 6:57 p.m., 15 minutes after the first *Allen* charge, the judge stated, "[l]et the jury come in. I just gave them one stick of dynamite.  I'm going to give them two."  Neither party objected.  When asked whether a unanimous verdict

---

[1] "'Allen' refers to the case *Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896).  The term is used generally in reference to supplemental instructions urging a jury to forego their differences and come to a unanimous decision." *United States v. Bottom*, 638 F.2d 781, 786 n.4 (5th Cir. Unit B Mar. 1981).

was possible, the jury foreperson responded that Ms. Clanton "is saying now that she misunderstood what we were deliberating about . . . . What you said was your part, the age part, she was considering that instead of just the gender." Best then requested an additional jury instruction, one "that earlier had been refused." The court agreed to discuss the request later. When the judge asked three jurors whether they believed further deliberations could result in a verdict, one answered in the negative, one said it was possible, and one stated she was not sure. The court then issued a second modified *Allen* charge.

As the court was issuing the charge, Ms. Clanton laughed. The judge stated, "this is not funny." Ms. Clanton replied, "I know it's not funny, Your Honor," and the judge continued the charge. At 7:03 p.m., the jury returned to the deliberation room.

Best then requested an additional instruction that discrimination against "older women" is illegal discrimination. The court denied the motion, opting instead to "let them stay out a little longer." At 7:24 p.m., 21 minutes after the second *Allen* charge, the jury returned with a unanimous verdict for TVA. The court then issued a judgment against Best on both her gender discrimination and age discrimination claims. Best timely appealed, challenging the judgment only with respect to her gender discrimination claim. Thus, our affirming the decision as to age discrimination needs no analysis.

## DISCUSSION

Best raises two issues on appeal. First, she argues that the district court erred by not instructing the jury on a "sex-plus-age" theory of gender discrimination under Title VII. Second, she argues that the district court erred when it issued two *Allen* charges within a 21-minute time period.

### I.    *Jury Instructions*

When a party makes a specific and timely objection to jury instructions, "we review that objection 'under an abuse of discretion standard, affording the trial court substantial latitude in describing the law to the jurors.'" *Jimenez v. Wood Cnty., Tex.*, 660 F.3d 841, 845 (5th Cir. 2011) (en banc) (quoting *United States v. Santos*, 589 F.3d 759, 764 (5th Cir. 2009)).  If a party fails to timely object according to the requirements of Federal Rule of Civil Procedure 51, however, we review according to the "exceedingly deferential" plain error standard. *Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 494 (5th Cir. 2002).

Rule 51(c)(1) states that "[a] party who objects to [a jury] instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection."  Under Rule 51(b)(2), such an objection must occur after the court announces its proposed instructions, but before the court delivers the instructions to the jury.  The standard we announced in *Jimenez* is clear: "a specific, formal, on-the-record objection is required."  660 F.3d at 845.

Other than initially submitting her proposed jury instructions to the court per the local rules, Best first mentioned proposed instruction P-14 after both parties rested just prior to the first charge conference.  Although the court invited her to discuss P-14 at the charge conference, she failed to do so, instead agreeing repeatedly to remove mention of age from the instructions.  During the second charge conference, Best chose only to object to the portion of proposed instruction D-7, stating jurors must "disregard any evidence you hear that is related to Plaintiff's age.  Any evidence you hear about Plaintiff's age claim cannot inform your decision about her gender claim[.]"  When asked if he would be satisfied if those two sentences were removed, Best's counsel replied, "Yes, sir."  Best made no further objections to the instructions before the court issued them to the jury.

No. 17-60044

Based on the record, the only possible objections Best made to the jury instructions are: (1) submitting her proposed instructions prior to trial, (2) objecting to the last two sentences of proposed instruction D-7, and (3) proposing the court issue a sex-plus-age instruction after the jury had initiated deliberations.

We have held that submission of proposed jury instructions alone is insufficient to preserve an objection on appeal. *See Russell v. Plano Bank & Trust*, 130 F.3d 715, 719 (5th Cir. 1997). To fulfill the requirements of Rule 51, a party relying on the submission of proposed instructions must nonetheless make "a general objection to the court's failure to include its requested instructions[.]" *Id.* at 720. Here, not only did Best fail to raise such a formal objection, she agreed when the court asked, "You agree that the instructions that you submitted having to do with age discrimination are inapplicable?" Because Best agreed that instructions explaining sex-plus-age discrimination not be given to the jurors, we cannot conclude that her answer to the court's question "made [her] position sufficiently clear to the court to satisfy Rule 51's objection requirement." *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 361 (5th Cir. 1995).

Best's desire to make an argument concerning the inclusion of P-14 prior to the first charge conference and then failing to follow-through when given the opportunity also cannot satisfy Rule 51. Despite the second opportunity to make objections, Best's failure to utilize the second charge conference and raise a formal objection solidifies the conclusion that she viewed the alteration to proposed instruction D-7 as sufficient. Finally, her objection urging that the court issue a sex-plus-age instruction following initiation of deliberations occurred too late to qualify under the timeliness requirement of Rule 51. *See Jimenez*, 660 F.3d at 845.

8

We therefore review the issue for plain error.  To succeed, Best must show: "(1) that an error occurred; (2) that the error was plain, which means clear or obvious; (3) the plain error must affect substantial rights; and (4) not correcting the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings."  *Russell*, 130 F.3d at 721 (quoting *Highlands Ins. Co. v. Nat'l Union Fire Ins. Co.*, 27 F.3d 1027, 1031–32 (5th Cir. 1994)).  We need not decide "whether the [instruction] was erroneous, because any error in this regard was not plain."  *Jimenez*, 660 F.3d at 847.  Indeed, when the proposed instructions call for an extension of well-settled precedent, "the district court's failure to do so cannot be plain error."  *Id.*

Best conceded at trial that the Fifth Circuit has yet to decide whether sex-plus-age discrimination is gender discrimination under Title VII.  Similarly, in her principal brief, she argues that an analogous Fifth Circuit case nonetheless opens the door to sex-plus-age discrimination under Title VII.  *See Jefferies v. Harris Cnty. Cmty. Action Ass'n*, 615 F.2d 1025, 1032 (5th Cir. 1980).  Best correctly notes, though, that *Jefferies* focused on sex-plus-race discrimination under Title VII because both race and sex are explicitly protected under the statute.  *See id.*  As in *Jimenez*, even if the district court erred in failing to instruct the jury on a sex-plus-age theory under Title VII, the failure to instruct on a theory of recovery not yet addressed by our circuit is not plain error.  *See* 660 F.3d at 847.

The district court, therefore, did not plainly err in failing to adopt Best's proposed jury instructions.

## II.    Allen *Charges*

When determining whether a district court issued an *Allen* charge in error, we traditionally evaluate both the semantic content of the charge and whether "the circumstances surrounding the use of the charge were coercive."

No. 17-60044

*United States v. Andaverde-Tinoco*, 741 F.3d 509, 515 (5th Cir. 2013) (citing *United States v. Winters*, 105 F.3d 200, 203 (5th Cir. 1997)).  While we review the use of an *Allen* charge for abuse of discretion, we review for plain error when the party fails to properly object.  *Id.*  Here, TVA argues that Best failed to properly object when the district court issued two *Allen* charges to the jury.

In *Andaverde-Tinoco*, the defendant generally objected to a proposed *Allen* charge and requested a mistrial in the alternative.  *Id.*  He argued that because "the jurors already said that they couldn't reach a verdict and they're divided numerically," the *Allen* charge was inappropriate.  *Id.*  Although we held that such an objection was insufficient to challenge the semantic content of the charge, the objection sufficiently "address[ed] the coerciveness of the charge under the circumstances and thus preserves that issue for appeal."  *Id.* at 516.

> Here, upon issuance of the first *Allen* charge, Best's counsel stated,
>
> MR. WAIDE: . . . I don't mean to be difficult; but, at the same time, Your Honor, the parties were not asked about the position on the *Allen* charge.  I understand an *Allen* charge is normally proper. But, in this case, where we have one juror that we already know is the minority, and the instructions single her out by saying, if there's one or more of you that's in the minority — when we know we had one in the minority.  So I again, move the court for a mistrial.  It's bound to put immense pressure on that one juror back there.

Just as in *Andaverde-Tinoco*, we hold that Best's language sufficiently addressed the coerciveness of the charge under the circumstances and therefore preserved the issue for appeal.  *See id.*  Best does not challenge the semantic content of the charge, only its coerciveness.  We proceed under an abuse of discretion standard.

TVA counters that even if Best raised an objection to the first *Allen* charge, she did not object to the second, and therefore cannot challenge the

No. 17-60044

"successive nature of the charges" as coercive.   While *Andaverde-Tinoco* admittedly addressed the use of only a single *Allen* charge, we nonetheless find the holding applicable.   Best's objection clearly indicated a challenge to the first *Allen* charge, namely the "immense pressure" it could place on Ms. Clanton.   When a party's objection to an *Allen* charge sufficiently "addresses the coerciveness of the charge under the circumstances," the issue is preserved. *See id.*

The trial court's response to the first objection also signaled futility in future objections relating to "pressure" on Ms. Clanton:

> THE COURT: Well, it puts pressure on them whether it's one or whether we knew there was one or not.  But, sure, there's pressure. But I also told them to not yield their conscientious beliefs or convictions for the mere purpose of reaching a verdict.  So the motion for a mistrial is denied.

"A party may be excused from the requirement of making a specific objection only where 'the party's position previously has been made clear to the trial judge and it is plain that a further objection would be unavailing.'" *Russell*, 130 F.3d at 720 (quoting 9A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2553 (2d ed. 1995)).  Regardless of how many *Allen* charges the court issued, the basis for any future objections would have been the same: there was a danger of undue pressure on the holdout juror, Ms. Clanton.  TVA's argument that Best needed to repeat her objection for the second *Allen* charge is unavailing.

In determining whether the district court coercively employed an *Allen* charge, we look to the totality of the circumstances.  *Andaverde-Tinoco*, 741 F.3d at 517.  Best cites to the single Fifth Circuit case involving successive *Allen* charges.  *United States v. Fossler*, 597 F.2d 478 (5th Cir. 1979).  There we held that the district court coerced the jury when it issued two separate *Allen* charges.  *Id.* at 485.  The jury had begun deliberating at noon on a Friday.

11

*Id.* at 483.  After five hours of deliberation, the jury foreman sent a note to the judge stating they could not reach unanimous agreement.  *Id.*  The judge issued an oral *Allen* charge, and deliberations continued for another four hours before the jury yet again informed the court it could not reach a verdict.  *Id.*  The jury then retired for the weekend.  *Id.*  After five additional hours of unsuccessful deliberation on Monday, the court issued a second *Allen* charge in writing.  *Id.* The jury then returned a verdict approximately one hour later.  *Id.*  In concluding the successive charges were coercive, we looked primarily to two factors: (1) the jury's indication on three separate occasions that they were deadlocked, and (2) the short period of time between the second *Allen* charge and the verdict.  *See id.* at 485.

Here, the totality of circumstances indicate a similarly coercive effect. To be sure, while the *Fossler* jury signaled deadlock on three separate occasions, at least one juror here answered that a verdict seemed possible when polled prior to the second charge.  Unlike *Fossler*, though, the amount of time between the first indication of possible deadlock and the final verdict was less than one hour.  Such a short period of time has traditionally characterized the borderline for a single *Allen* charge, let alone two.  *Cf. Andaverde-Tinoco*, 741 F.3d at 517 (two hours between deadlock and verdict; single charge); *United States v. Bottom*, 638 F.2d 781, 788 (5th Cir. Unit B Mar. 1981) (three hours between deadlock and verdict; single charge); *United States v. Scruggs*, 583 F.2d 238, 241 (5th Cir. 1978) (48 minutes between deadlock and verdict; single charge).  While it might not have been erroneous to issue the first *Allen* charge in response to the jury note inquiring about unanimity, issuing the second charge so promptly created too great a risk of coercion.  After sending the jury to deliberate following the first charge at 6:38 p.m., the judge recalled the jury *sua sponte* 19 minutes later, remarking, "[l]et the jury come in.  I just gave them one stick of dynamite.  I'm going to give them two."  To conclude that less

than twenty minutes was sufficient to allow the jury to deliberate according to their newly received *Allen* charge fails to embody the "reflection and care" necessary to avoid coercion. *See, e.g., United States v. Patel*, 485 F. App'x 702, 715 (5th Cir. 2012).

The court's recalling the jury so quickly after the first charge created too likely a signal to the holdout juror that a unanimous verdict, not continued deliberation, was expected. It is therefore not surprising that the jury returned a verdict within 21 minutes of the second charge — the same amount of time between the first charge and its subsequent recall to receive the second charge. Taken in their totality, the circumstances lead us to conclude that the district court abused its discretion in issuing two *Allen* charges so close together temporally.

## CONCLUSION

We AFFIRM the district court's judgment concerning the age discrimination claim. We VACATE the judgment with respect to the gender discrimination claim and REMAND for a new trial.